[Crim. No. 1283. In Bank.—October 8, 1906.]

## THE PEOPLE, Respondent, v. LEON SOEDER, Appellant.

CRIMINAL LAW — MURDER — MOTIVE—COLLECTING INSURANCE MONEY—
DESIRE FOR ELIGIBLE MARRIAGE—LETTERS.—When the evidence is
sufficient to show that the homicide was committed by defendant
for the purpose of collecting insurance money obtained by him
on the life of the deceased, with the desire to commend himself
as eligible for marriage with a young woman to whom he had
represented that he was heir to an estate in an amount equal to
the amount of such insurance, letters addressed to her stating that
he would shortly come into such estate, and would be a wealthy
man, were admissible upon the question of motive for the defendant
for the crime committed.

ID.—LIFE POLICY PAYABLE TO FOREIGN SISTER—HANDLING OF PROCEEDS.
—The fact that the defendant had taken only an accident policy
in his own name upon the life of the deceased, and had taken a
life policy thereupon in the name of a sister of the defendant,
who, according to defendant's statement, was the wife of the
deceased, does not prevent the insurance policy taken in her name
from being evidence of motive, where it is apparent that he
expected to handle the proceeds thereof.

ID.—TESTIMONY OF CELLMATE FOR PROSECUTION — CONFESSION BY DE-
FENDANT—ACTION BY JUDGE—DEFENDANT NOT PREJUDICED.—Though
the trial judge is rigorously prohibited from action or word having
the effect to convey to the jury his personal opinion as to the
truth or falsity of any evidence, yet where a cellmate of the
defendant had testified for the prosecution to a confession of the
murder made to him by defendant, for the purpose of obtaining
the insurance, it was not error for the court to elicit from the
witness that he understood that the defendant was charged with
murder, the penalty for which might be death, and to inform
him, without intimating either way that his testimony was true
or false, that "any person who by willful perjury secures the con-
viction and execution of any innocent person is punishable by
death," and to elicit from him that, with that knowledge, he had
no desire to change or correct his testimony.

ID.—EFFECT OF ADHERENCE TO TESTIMONY—PROVINCE OF JURY.—The
fact that the effect of the adherence of the cellmate to his testimony
in the face of the information as to the penalty for willful perjury
resulting in the conviction of an innocent person, was to strengthen
that testimony in the minds of the jurors, was due solely to the fact
that the jurors knew that he was testifying with that knowledge;
and it was proper for them to know this fact and to take it into con-
sideration with all other matters going to the credibility of the
witness, in determining the weight to be given to his testimony.

ID.—CROSS-EXAMINATION OF DEFENDANT—QUESTIONS NOT PREJUDICIAL—
TESTING CREDIBILITY—CONVICTION OF FELONY.—Where the defend-
ant voluntarily testified in his own behalf he became subject to
the same rules of cross-examination for testing his credibility
thereon as any other witness.   When he denied that he com-
mitted the murder, he was properly asked on cross-examination
where he was on that night at the hour of the death; and it
was competent for the prosecution to show upon his cross-examina-
tion that he had been before convicted of a felony.

ID.—ARGUMENT OF DISTRICT ATTORNEY.—It is not misconduct for the
district attorney in his argument fully to state his views as to
what the evidence shows and as to the conclusions to be fairly
drawn therefrom.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Carroll Cook, Judge.

The facts are stated in the opinion of the court.

Edward S. Salomon, and Alex. Campbell, for Appellant.

U. S. Webb, Attorney-General, C. N. Post, Assistant Attorney-General, Lewis F. Byington, District Attorney, and J. Charles Jones, for Respondent.

ANGELLOTTI, J.—The defendant was charged by information filed in the superior court of the city and county of San Francisco with the crime of murder, alleged to have been committed on January 10, 1904, by the unlawful killing of one Joseph Blaise, and having been convicted of murder in the first degree and adjudged to suffer death, appeals from the judgment and from an order denying his motion for a new trial.

There is not, and could not well be, upon the record before us, any claim that the evidence adduced on the trial was insufficient to support the verdict, and it will therefore be unnecessary to state the evidence, except in so far as is essential to a proper understanding of the points made for reversal.

Between eight and nine o'clock A. M. on January 11, 1904, the body of Blaise was found lying on the west side of Taylor Street, between Vallejo and Green streets, in the city of San Francisco. The evidence afforded by the condition of the

body and of the ground where it lay was clear and convincing to the effect that Blaise had been foully murdered at that place the evening before, by being first struck down from behind with some blunt instrument, and then killed by a knife driven into and drawn clear across the throat, severing the carotid artery and jugular vein. The spot where the body was found was a lonely place, Taylor Street at Vallejo Street running over the brow of Russian Hill, and between Vallejo and Green streets being a very steep grade without sidewalk and without a house on either side. No one witnessed the killing, and the state was therefore without direct evidence as to the identity of the murderer.

Blaise, according to the statements of defendant, was the husband of defendant's sister, who lives in Germany, and has never been in this country. He was apparently a laborer and without means, and at the time of his death had been in the United States only about six weeks, and in San Francisco for less than a month, having left his home in Germany with defendant in November, 1903. He was entirely without knowledge of the English language. On January 7, 1904, defendant had succeeded in obtaining two policies of insurance on the life of Blaise, one of which was an accident policy for three thousand dollars, payable to defendant, and the other of which was an ordinary life policy for three thousand dollars, payable to defendant's sister, who, as already stated, was in Europe. The theory of the prosecution was that the defendant, who had lived in this state for several years, went from California to Germany for the purpose of bringing Blaise to this country, so that he might then insure his life here, and subsequently kill or otherwise dispose of him, in order to obtain the insurance money, and that in pursuance of this plan he did bring Blaise from his home in Germany to San Francisco and there obtained insurance on his life, and then lured him to this lonely spot on Russian Hill and there killed him, so that he might realize on the investment he had made. Difficult as it is to conceive of a human being so constituted that he could deliberately make and carry into execution such a plan, the evidence sufficiently supports the theory above stated.

1. A portion of the evidence introduced by the prosecution in support of this theory consisted of certain letters written

by defendant to a young woman in San Francisco. The admission of these letters in evidence over the objection of defendant is claimed to have constituted prejudicial error. It is urged that the letters are of such a character that they must have prejudiced the jury against the defendant. This, of course, would be no sufficient objection to their being received in evidence if they were relevant to any material fact in issue. Evidence having a direct tendency, in view of the surrounding circumstances, to prove motive on the part of a person for a crime, and thus to solve a doubt "either as to identity of the slayer, the degree of the offense, the insanity of the defendant, or to the justification or excusability of his act," is admissible against a defendant, however discreditably it may reflect on him, and even where it may show him guilty of other crimes. (See *People* v. *Cook,* 148 Cal. 334, [83 Pac. 43, 46, 50] ; *People* v. *Suesser,* 142 Cal. 354, 363, [75 Pac. 1093].) In *People* v. *Brown,* 130 Cal. 591, 594, [62 Pac. 1072], this court, quoting approvingly from *People* v. *Stout,* 4 Park. C. C. (N. Y.) 128, said : "Whatever fact tends legitimately and fairly, according to the ordinary operation of the human mind and the ordinary principles of human conduct, to show motive, may properly be given in evidence in proof of any assumed motive for the commission of the crime." Evidence as to a motive for the killing on the part of the defendant is peculiarly material in a case where the identity of the party who committed the crime is a fact in dispute, though, as we have seen, the rule as to its admissibility does not confine it to such cases. (See *People* v. *Cook,* 148 Cal. 334, [83 Pac. 43, 46, 50].)

We have no doubt that the letters admitted in evidence in this case were admissible upon the question of motive. The evidence of the young woman to whom they were written showed that from April, 1903, to the time of his departure for Germany, on October 16, 1903, defendant had been most anxious to win her favorable regard, and especially desirous of showing to her that he was possessed of money. He had been assiduous in his attentions, and had made her presents of articles aggregating several hundred dollars in value, and had also represented to her that money had been bequeathed to him by an uncle in Germany, which he would shortly obtain, and that he would be a wealthy man. He left Cali-

fornia on October 16, 1903, with the purpose avowed to her
of obtaining a portion of the money given to him, telling
her that the lowest sum he would come back with would be
ten thousand dollars, which sum, it may properly be noted
in passing, was the exact amount of life insurance that
defendant sought to obtain on the life of Blaise, the insur-
ance companies applied to refusing to issue a policy in such
a large amount.    The letters introduced in evidence, eight
in number, were written by defendant between the time of
his departure and January 1, 1904, several having been writ-
ten in New York and France, and at least three in San Fran-
cisco after his return.    This series of letters, the last of
which was mailed December 29, 1903, unmistakably shows
that defendant for some reason was most desirous of marry-
ing the young woman, and also that he was satisfied that it
was essential to the accomplishment of this that he should
immediately obtain a considerable sum of money from some
source, and that it would be useless to persist in further
attentions, or even to see her, until such money was obtained.
It throws some light upon the question as to the ultimate
object of the earnest efforts of defendant to obtain insurance
in large amounts upon the life of Blaise, indicating an object
the accomplishment of which—viz. the immediate obtaining
of the insurance money—necessarily included the death of
Blaise or his disappearance under such circumstances as to
make sufficient proof of death possible.    It had a direct
tendency to show a motive on the part of defendant for the
doing of that which would make the insurance policies pay-
able, as he undoubtedly believed the death of Blaise would
do, and thus to show a motive on his part for the killing of
Blaise.

While the effect in this behalf of the first seven letters may
have been somewhat impaired by the last letter, written
December 29, 1903, wherein defendant reproaches the young
woman for not having answered any of his letters or sent
him any word or come to see him, all because he had dis-
appointed her in not sooner procuring money, and declares
the engagement broken, and demands a return of his presents,
such effect was not destroyed thereby.    The letter was of
such a character that it certainly cannot be held that it
shows, as a matter of law, that defendant had given up all

desire or hope of winning the hand of the young woman, or that he did not feel that with money in his possession he could still obtain her.

It is suggested that as the life policy was payable to the wife of Blaise, defendant could not derive any benefit therefrom, and there was therefore, so far as such policy was concerned, no possible motive on his part for the killing of Blaise. This suggestion, however, is practically without force when we remember that this wife, if there was such a person, was, according to the testimony, the sister of defendant, and a resident of a country thousands of miles away. In the light of all the facts, it is apparent that defendant expected to himself handle the proceeds of such policy. It must also be borne in mind that we have nothing except the statement of defendant, acquiesced in by Blaise when alive, to show that Blaise was the brother-in-law of defendant, or that he had a wife at all.

2. One Cooper, who was a cellmate of defendant in the county jail while defendant was confined there awaiting trial, and who testified that he had known defendant prior to the killing of Blaise, gave testimony to the effect that the defendant had admitted to him that he killed Blaise for the purpose of obtaining the insurance, and had, with the aid of a pencil drawing which defendant himself admittedly made, given him a detailed statement of the locality where and the manner in which the crime had been committed. He further testified that defendant had asked him to assist in establishing an *alibi*. After Cooper had concluded his testimony, the court asked Cooper if he understood that the defendant was charged with murder and that the punishment for murder in the first degree might be death, and Cooper answered in the affirmative. The court then said: "Now, the court has no desire or intention of intimating in either way that your testimony is true or that it is false, but that you may have an opportunity of correcting the same, if any be untrue, I inform you that under the law of this state any person who by willful perjury secures the conviction and execution of any innocent person is punishable by death. With the knowledge of the punishment attached in such case, have you any change or correction to make in your testimony?" The witness answered in the negative.

CL Cal.—2

The district attorney then asked, "You have no change or correction to make?" and Cooper answered, "None." This occurred in the presence of the jury. No objection or intimation that the same was not entirely satisfactory was made by defendant in regard to any of these questions, and no exception was taken to the action of the court or district attorney in the matter.

It is now urged that the court had no right to pursue this course of examination, for the reason that it thereby intimated to the jury an opinion on the part of the court as to the truth or falsity of Cooper's evidence, and also that it was prejudicial to the accused, as it left with the jury the impression that the witness had testified truthfully.

Under our system the trial judge is rigorously prohibited from action or words having the effect of conveying to the jury his personal opinion as to the truth or falsity of any evidence. The determination of questions of fact must be made by the jury free from the influence that knowledge of the trial judge's views thereon might have. If there was anything in the action complained of that would have the effect of intimating to the jury views on the part of the court as to Cooper's evidence which were adverse to defendant's interests, defendant would have good ground for complaint.

We are, however, unable to see therein any intimation on the part of the court of an opinion unfavorable to the defendant and in favor of the evidence given by Cooper. If, despite the court's express disavowal of an intent to intimate either way as to the truth or falsity of the evidence given by Cooper, the statement made and questions asked by the court had the effect of conveying any intimation of opinion on its part, such intimation was that the court was inclined to doubt the truth of the evidence, rather than to believe it. If it had been otherwise, there could have been no occasion for making the statement and asking the questions, for certainly it could not have been and cannot now be assumed by any one from the nature of the statement and questions, that it was the desire of the court thereby to fortify and emphasize the evidence given by the witness. It may be that the necessary effect of the statement and questions was to intimate a doubt on the part of the court as to the truth of the evidence given by Cooper, but in this there could be no

intimation unfavorable to defendant, and he, therefore, cannot complain. So far, therefore, as the remarks and questions of the court are concerned, there was no intimation of opinion upon the part of the court that can be held to have been misconduct prejudicial to defendant's rights. It is unnecessary to here determine whether the objections now made in this matter can be considered without objection made or exception reserved in the trial court.

We see no merit whatever in the objection that the effect of the adherence to his testimony by Cooper, in the face of the information given him by the court as to the penalty for willful perjury resulting in the conviction and execution of an innocent person, was to strengthen that testimony in the minds of the jurors. If such was the effect, which may be conceded, it was due solely to the fact that the jurors knew that the witness was testifying with actual knowledge as to the penalty prescribed by law for perjury. This it was entirely proper for them to know and take into consideration, with all other matters going to the question of credibility of the witness in determining the weight that should be given to his testimony.

We are unable to see any merit in the contention of defendant relative to the incident we have been discussing. Everything done by the court was in furtherance of the ultimate object of every judicial investigation—viz. the eliciting of the truth; there was therein no intimation of opinion on the part of the court adverse to defendant's interest; and the only effect thereof was to bring to the attention of the jury a fact which it was proper for them to know in determining the weight to be given to Cooper's evidence.

3. Many rulings of the trial court overruling objections to questions asked the defendant on his cross-examination by the district attorney are complained of, it being claimed that such questions were not proper cross-examination, for the alleged reason that they had no reference to matters about which he was examined in chief. (Pen. Code, sec. 1323.)

Defendant had testified very fully on his direct examination as to his conversations with Cooper in the county jail, denying the truth of Cooper's statements, and, testifying explicitly in regard to the diagram made by him showing the place of the homicide, said that he told Cooper at the time that he

knew nothing about the place or its whereabouts of his own knowledge, and that he was drawing the diagram solely from his own recollection of a map that had been produced in the police court. This was in direct conflict with the evidence of Cooper as to the conversations between them upon this subject. Several of the questions asked on cross-examination of the defendant were devoted to an effort to show by him that he did, at the time of the conversation with Cooper, know from personal observation as to the whereabouts and character of the place. It may be strongly argued that this was legitimate cross-examination upon a matter concerning which he had been "examined in chief,"—viz. his conversation with Cooper,—for the reason that any answers to the questions asked which tended to show such personal knowledge on his part would impair the force of his direct testimony as to what his statements to Cooper were in this regard, and therefore would be legitimate cross-examination within the rule laid down in *People* v. *Gallagher,* 100 Cal. 466, 475, [35 Pac. 80]. It is not necessary, however, to decide this point, in view of the answers given by the defendant to the questions. By those answers he steadfastly denied any personal knowledge as to these matters, and the evidence elicited was of such a nature that prejudice could not have been suffered by defendant on account of such cross-examination.

Outside of the testimony as to the Cooper conversations, defendant had testified on his direct examinations simply as follows: "I did not kill my brother-in-law, Joseph Blaise. I never employed or tried to employ any one to, or make any combination or agreement with anybody to kill him." On cross-examination he was asked: "Where were you on the night of January 10th of this year at the hour of nine o'clock?" This time, according to the evidence, was about the time of the commission of the murder. This undoubtedly was legitimate cross-examination as to the general statement made by defendant on his direct .examination, to the effect that he was not the person who had committed the murder. (See *People* v. *Gallagher,* 100 Cal. 466, 475, [35 Pac. 80].)

The defendant, having voluntarily testified in his own behalf, became "subject to the same rules for testing his credibility before the jury by impeachment or otherwise, as any other witness" (*People* v. *Hickman,* 113 Cal. 80, 86,

[45 Pac. 175]), and it was therefore competent for the prosecution to show either by his cross-examination or the record of the judgment that he had theretofore been convicted of a felony. (Code Civ. Proc., sec. 2051; *People* v. *Arnold,* 116 Cal. 682, 687, [48 Pac. 803]; *People* v. *Sears,* 119 Cal. 267, 271, [51 Pac. 325]; *People* v. *Meyer,* 75 Cal. 383, 386, [17 Pac. 431].) The rulings of the court upon this point were therefore not erroneous.

The usual contention is made that the district attorney in his closing argument to the jury went beyond the limits of legitimate argument to the prejudice of the defendant. We find no support for this contention in the record. This is not a case like that of *People* v. *Cook,* 148 Cal. 334, [83 Pac. 43], where the district attorney stated as a fact something most prejudicial to the defendant, as to which there was absolutely no intimation in the evidence. As was said in *People* v. *Romero,* 143 Cal. 458, 460, [77 Pac. 163, 164], "Counsel has the right in the argument to fully state his views as to what the evidence shows, and as to the conclusions to be fairly drawn therefrom." In the case at bar the district attorney, in our judgment, did no more than this.

The transcript on appeal discloses no other point requiring discussion.

The judgment and order denying the motion for a new trial are affirmed.

Shaw, J., Hall, J., Henshaw, J., Lorigan, J., and Sloss, J., concurred.

NOTE.—Justice Hall, of the district court of appeal, participated in the hearing and determination of this case in the place of Justice McFarland.