[Crim. No. 1984.  Second Appellate District, Division One.—December 4, 1930.]

THE PEOPLE, Respondent, v. THEODORE FRANKLIN ALBRITTON et al., Defendants; FRANK M. SHIRAISHI, Appellant.

190

Charles J. Orbison for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HOUSER, J.—By an information filed in the superior court, three men named respectively Albritton, Smith and Shiraishi were charged with the commission by them of the crime of murder. In the same information the defendant Shiraishi was also charged with the commission of a prior felony. Shortly following the date of the arraignment of the three defendants, Shiraishi presented a motion that he be granted a trial separate from either or both of his co-defendants—which motion was by the court denied. Two days after the trial of all the defendants had commenced, Albritton and Smith each withdrew his former plea of "not guilty" and in lieu thereof entered a plea of "guilty as charged in the information". The trial then proceeded as against Shiraishi only, and following his conviction of the crime of murder and the finding of the jury that theretofore he had "suffered a prior conviction of a felony", he has appealed to this court from the judgment and the order entered by the superior court by which his motion for a new trial was denied.

From the evidence received on the trial of the action it would appear that the murder in question occurred following an unsuccessful attempt made by the three defendants to rob an alleged Chinese gambling establishment. Each of the defendants Albritton and Smith testified fully regarding the plan of the robbery and the preliminary arrangements which he stated had been made by the three defendants in anticipation of its commission; and which included the purchase of a police badge by Shiraishi for the use of Smith in order that he and Albritton, who also had a police badge, might pretend to be police officers at and during the time that the robbery was taking place. It also appeared that Albritton and Smith had gone to the scene of the attempted robbery and resulting murder in an automobile owned by Smith; while Shiraishi repaired thither in a Ford coupe. The testimony given by Albritton and Smith also shows that they were expected to enter the room or rooms where several Chinese were engaged in gambling and thereupon commit the robbery—during which time Shiraishi was to remain outside and act as a "lookout". The plan of operation was but partially completed. Almost immediately after Albritton and Smith had obtained an entrance into the place where the proposed victims of the robbery were congregated, Smith apparently abandoned his former intention to commit any crime; at least he left the room by the same door at which he had entered it, at which point (according to his testimony) he encountered Shiraishi to whom he gave the police badge and a pistol which he (Smith) theretofore had had in his possession, and thereupon left the scene of the crime. Seeing that Smith was leaving the premises, Albritton also decided to make his "get away" by a rear door; and it was while making his escape from the premises and in the course of a pistol fight between Albritton and some of the Chinese that Albritton fired the shot from his revolver which caused the death of the person for whose murder the defendant Shiraishi was on trial.

Appellant first complains that the testimony given by the accomplices Albritton and Smith was not sufficiently corroborated.

Section 1111 of the Penal Code provides that: "A conviction cannot be had upon the testimony of an accomplice

unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; . . . ''

In that regard, among other incriminatory facts which were introduced in evidence, was testimony that shortly preceding the time when the crime occurred Shiraishi was seen in the immediate neighborhood of the alleged gambling establishment where the attempted robbery and subsequent murder took place; that Albritton and Shiraishi were seen together in a Ford coupe in the afternoon of the same day; that on that day Shiraishi had purchased a police badge similar in appearance to the one used by Albritton at the time the crime was committed; that on the day in question Shiraishi had borrowed from a friend of his a Ford coupe; that one or two hours after the murder had taken place Shiraishi telephoned to the wife of Albritton and told her that Albritton had been shot, and in effect that the murdered man had been shot by a Japanese or a Chinaman and said that he (Shiraishi) ''was there''; that following the arrest of Shiraishi, in the upholstering of the automobile in which he had been transported from the place of his arrest to the jail, the arresting officer found a police badge which resembled the police badge which Shiraishi had purchased on the day when the crime was committed.

No useful purpose would be served by an exhaustive review of legal principles contained in the many authorities of this state which both define the word ''corroboration'' and relate to the sufficiency of evidence introduced for the purpose of corroborating testimony given by an accomplice. It may be conceded that the law does not contemplate the conviction of a person accused of the commission of a crime where the attempted corroboration of the testimony given by an accomplice rests upon such evidence as should merely create a suspicion of the guilt of the defendant on trial. On the other hand, in order that it meet the requirements of the statute, it is not imperative that the corroborating evidence be absolutely convincing, or that it be complete as to each item of evidence to which the accomplice has testified. It may be but slight and, if standing alone, entitled to but little weight; provided always that it ''tend to connect the defendant with the commission of the offense''.

(*People* v. *Kelly,* 69 Cal. App. 558, 570 [231 Pac. 767, 772], and authorities there cited.)

From a consideration of the evidence adduced on the trial of the instant action in corroboration of the testimony given by the accomplices of defendant Shiraishi, it would seem manifest that it was ample not only for the purpose of satisfying the demands of section 1111 of the Penal Code, but as well to justify the jury in its apparent conclusion that the crime in question was committed with the intentional criminal consent, co-operation and participation of the defendant Shiraishi therein. ■ However, in the same connection, appellant presents the point "that even if there was a conspiracy or common design to commit robbery, the same was abandoned before any homicide was committed".

As hereinbefore indicated, the evidence upon which appellant relies for his conclusion that before the murder was committed the conspiracy which theretofore had existed among the three defendants had been abandoned, was to the effect that almost immediately following the entrance of Albritton and Smith into the alleged gambling-house Smith retreated therefrom, delivered his pistol and police badge to Shiraishi, who accepted the same, and that it was only thereafter, while Albritton likewise had abandoned his intention to commit a robbery and was endeavoring to effect his escape from the premises, that the fatal shot was fired.

That the principle for which appellant contends is untenable, is decided in each of the cases of *People* v. *Woods,* 147 Cal. 265 [109 Am. St. Rep. 151, 81 Pac. 652], and *People* v. *Kauffman,* 152 Cal. 331 [92 Pac. 861], where a situation was involved similar to that presented in the instant case. See, also, *People* v. *Boss,* 210 Cal. 245 [290 Pac. 881], *People* v. *Dowell,* 204 Cal. 109 [266 Pac. 807], and, generally, authorities cited in 13 Cal. Jur. 600.

■ It is urged by appellant that the trial court committed prejudicial error in that, over the objection of defendant Shiraishi, the wife of defendant Albritton was permitted to testify to certain material facts within her knowledge.

In part, section 1322 of the Penal Code provides that: "Neither husband nor wife is a competent witness for or against the other in a criminal action or proceeding to which one or both are parties, except with the consent of both, . . . "

The record herein shows that the wife voluntarily and willingly testified as a witness in the case, and that her husband expressly consented that she do so. But even had the husband objected, it is difficult to perceive how the testimony given by the wife would have been affected by the terms of the statute. ▮ In substance, the provision of section 1322 is that the wife is not a competent witness "*against*" the husband. Manifestly, the primary purpose of the statute is not to afford protection to third persons, but only to preserve inviolate the confidence which by legal sanction exists between a husband and a wife. Before the time at which the wife gave her testimony the husband had pleaded "guilty as charged in the information". He was no longer a defendant on trial. As far as having a tendency either to convict or to acquit her husband of the charge preferred against him, the testimony of the wife was of no effect. In the language of the statute, the wife was not a witness "*against*" the husband. In section 392, volume 1, Wharton's Criminal Evidence, appears the statement: ". . . Where, also, a married defendant has pleaded guilty, or is entirely removed from the record, whether by verdict pronounced in his favor or by a previous conviction, his wife may testify either for or against any other persons who may be parties to the record, and the mere hope that, by testifying against a prisoner, a wife may procure the pardon of her husband who has been previously convicted of another crime will not affect her competency, though it may shake her credit. . . . "

To the effect that where it appears that the testimony of the wife will not injure the husband she may be a competent witness against an accomplice, see section 306, Underhill on Evidence; also the following authorities: *United States* v. *Addatte,* 6 Blatchf. 76 [Fed. Cas. No. 14,422] ; *Powell* v. *State,* 58 Ala. 362; *Commonwealth* v. *Manson,* 2 Ashm. (Pa.) 31; *Moffit* v. *State,* 2 Humph. (Tenn.) 99 [36 Am. Dec. 301] ; *Blackburn* v. *Commonwealth,* 12 Bush (Ky.), 181.

In the instant case the testimony given by the wife occupied the same position as though the husband was not a party either to the particular action or to any other action arising out of the same alleged facts. Although in certain circumstances (not here present) it is possible that persons other than the husband might claim the benefit of the rule

which forbids the wife to testify against the husband (as to which situation no opinion is intended to be expressed herein), an examination of the statute fails to disclose language which will bear the construction that, in the circumstances here present, the appellant was entitled to have the testimony given by the wife excluded from consideration by the jury.

A part of the testimony given by the wife of defendant Albritton consisted of certain admissions made to her by defendant Shiraishi in a conversation which took place over the telephone—to which testimony defendant Shiraishi objected on the ground that a sufficient foundation had not been laid for its introduction in evidence. It appeared that Shiraishi had first talked with the mother of Albritton; that the mother identified the voice at the telephone as that of Shiraishi; and that he expressed a wish to talk to the wife, who immediately was called to the telephone. Furthermore, that in a subsequent conversation between Shiraishi and the mother, he admitted having had the previous conversation with the wife. The identity of defendant Shiraishi having been thus established, it follows that his objection to the introduction in evidence of the testimony in question was not well taken.

Appellant also specifies alleged prejudicial error in that the trial court denied his motion for a trial separate and apart from either of his co-defendants. By the terms of section 1098 of the Penal Code, the granting of such a motion rests within the discretion of the trial court. Since no abuse of such discretion is shown to have existed, or to have influenced the trial court in its decision in the matter, it is apparent that the point urged by appellant is without merit. Besides, since after each of appellant's co-defendants pleaded ''guilty as charged in the information'' they were eliminated from the trial, it would follow that at least thereafter the defendant Shiraishi did have a separate trial as to the charge which was preferred against him.

Finally, it is contended by appellant that the trial court erred ''in permitting the district attorney to plead and prove alleged prior convictions of the defendant Frank Shiraishi''.

That part of the information herein which related to the charge that before the filing of such information defendant

had been convicted of a felony, is as follows: "That before the commission of the offense hereinabove set forth in this information, said defendant, Frank M. Shiraishi, was, in the United States District Court, Southern Division, Southern District of California, convicted of the crime of violation of Harrison Narcotic Act of December 17, 1914, as amended February 24, 1919, and Jones-Miller Act of February 9, 1909, as amended January 17, 1914, and as amended May 26, 1922, a felony, . . . "

In the case of *People* v. *Bigelow*, 94 Cal. App. 28 [270 Pac. 460], it was held that a conviction under the "Harrison Narcotic Act" constituted a felony which, on being pleaded and proved, authorized the trial court to impose a sentence as for one who "theretofore had been convicted of a felony". Therefore, as far as concerned the introduction of evidence which tended to prove the prior conviction of defendant Shiraishi of a violation of the so-called "Harrison Narcotic Act", no error was committed by the trial court.

But as relates to the conviction of defendant Shiraishi of a violation of the "Jones-Miller Act" [42 Stat. 596, as amended] a different situation is presented.

By the provisions of section 668 of the Penal Code: "Every person who has been convicted in any other state, government, or country, *of an offense which, if committed within this state, would be punishable by the laws of this state* by imprisonment in the state prison, is punishable for any subsequent crime committed within this state in the manner prescribed in sections 644, 666 and 667, and to the same extent as if such prior conviction had taken place in a court of this state."

The objections of defendant on the trial of the action, as well as on this appeal, are directed solely to the fact that the "Jones-Miller Act" relates to custom laws and that "we have no custom laws whatsoever in California". In substance, the point urged by appellant is that because there are no custom laws in this state no authority existed for either pleading or proving the prior conviction of defendant of a violation of the custom laws of the United States, and that the record of such conviction was introduced in evidence "for the purpose of degrading and debasing defendant in the eyes of the jury".

Since no authority is cited by respondent by which may be justified in law the introduction in evidence of a judgment of conviction of a defendant for an offense not denounced by the statutes of this state, and since it is manifest that the natural effect of the introduction in evidence of such a record necessarily would be to create a prejudice in the "mind" of the jury against the defendant—it would follow that the point presented by appellant is well taken. However, the mere fact that error was committed by the lower court in the course of the trial is not all that is required. Before a judgment may be set aside, or a new trial may be granted, it is necessary that "after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice". (Sec. 4½, art. VI, Const.)

Considering the evidence adduced on the trial of the action, this court is impressed with the correctness and justice of the verdict returned by the jury. Although the evidence did not amount to a demonstration of the guilt of the defendant Shiraishi, it would be difficult to understand how any verdict other than that the defendant was "guilty as charged in the information" could have been rightly returned. Nor, when the fact that the prior conviction of the defendant on a charge of having violated the "Harrison Narcotic Act" was legally before the jury is kept in mind, is it possible to more than conjecture that another and different conviction of the defendant for a violation of the custom laws of the United States would produce any effect on the jury as far as influencing it in any way in the rendition of its verdict was concerned. By the judgment of conviction on the "Harrison Narcotic Act" count, he was already so "degraded and debased" that a similar judgment under another count in the same action (even though for a different offense) could not have resulted in such prejudice to the defendant as to make the error present a situation where this court should be convinced that "it resulted in a miscarriage of justice".

The judgment and the order denying the motion for a new trial are affirmed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 16, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 29, 1930.