[Crim. No. 3591.   Second Dist., Div. One.   Oct. 14, 1942.]

THE PEOPLE, Respondent, v. JAMES SHACK, Appellant.

James Shack in pro. per., for Appellant.

Earl Warren, Attorney General, and Eugene M. Elson, Deputy Attorney General, for Respondent.

WHITE, J.—In an information filed by the district attorney of Los Angeles County, defendant was accused of the crime of rape, allegedly committed on or about December 28, 1941, with a female person under the age of 18 years. An amended information was filed, which added an allegation charging a prior felony conviction against the defendant. Following entry of a plea of not guilty to the amended in-

formation and admission of the prior conviction, the cause proceeded to trial before a jury, which returned a verdict finding the defendant guilty of the offense charged in the amended information and recommended that the punishment be by imprisonment in the state prison. (Pen. Code, § 264.) A motion for a new trial was denied. From the judgment of conviction and the order denying his motion for a new trial defendant prosecutes this appeal.

Briefly, we find in the record evidence that the prosecutrix, a girl of the age of 17 years, lived with her family in Los Angeles on the front part of certain premises, while defendant, his wife and child, occupied the rear portion of the same property. The complainant had known the defendant for about six months prior to the 28th of December, 1941. On the morning of the date just mentioned, defendant's wife made mention of an elderly lady who desired to employ a young girl in her household, and suggested that they take the prosecutrix to see the prospective employer. The complainant advised her father as to where she was going, and about 11:30 on the morning of December 28th she departed in the company of defendant. They boarded a street car and went to Glendale, at which point they alighted about 1:30 p. m. The two entered a liquor store, where defendant purchased a bottle of wine, after which defendant and the girl started walking in the direction of the foothills. Arriving there, they left the road and made their way along a path through the brush. They stopped in the midst of some bushes and trees, whereupon defendant stated to the girl that he "wanted to see if I ever had intercourse with anybody." The prosecutrix said nothing, but commenced to cry. She tried to pull away from the defendant, but he dragged her down onto his lap. He then placed his hands on her private parts and removed his overcoat, telling her to lie down upon it. When she tried to get away from him, he forced her down upon the coat, and thereupon accomplished an act of sexual intercourse with her. Soon thereafter the two got up and started down the hillside. On the way down, according to complainant, defendant asked her if she would do him a favor. In answer to her question as to what favor he desired, defendant asked her to write a note for him. He produced some paper, and upon the same she wrote two notes, both of which were introduced in evidence. Without giving the contents of these notes, it is sufficient to say that in one of them she accused

her father of lewd and lascivious acts and of outraging her person, while in the other she wrote, "I have been out with Mr. Shack. He never bothered me in any way."

From the testimony of the prosecutrix it appears that upon the day in question it was raining and wet and muddy on the hillside. She identified some clothing with mud upon it, stating that the mud stains got upon the coat at the time of the attack upon her. It is further in evidence that on the way home appellant told the girl that she should tell his wife that they were out to see the lady who was expected to employ her, but that she was not at home and would not return until after Christmas vacation. However, upon returning home, the girl complained to her father and mother of what had happened to her at the hands of defendant, and she was thereafter examined by an examining physician at Juvenile Hall. A policewoman who met the prosecutrix on the day following the alleged attack went to Glendale in an automobile, and the complainant guided the officer through Griffith Park and into the hills to a place about seventy-five yards from the road, heavy with underbrush. The girl also directed the officer to the liquor store where the wine heretofore mentioned was purchased. An employee of the liquor store testified that defendant and the prosecutrix were in his place of business around 1:00 or 2:00 o'clock on a Sunday afternoon about the 28th of December, and that the defendant purchased a bottle of wine, at which time defendant admonished the girl not to "tell her mother about this." Defendant did not testify as a witness in his own behalf.

As a first ground of appeal, it is urged by appellant that the amended information was not read to the jury at the trial, as required by subdivision 1 of section 1093 of the Penal Code, and that the jurors therefore remained uninformed of the charge made against him. This claim is without merit, for the clerk's transcript discloses that "reading of the amended information is waived"; while the reporter's transcript reveals that when the case was called for trial on the information, March 11, 1942, the following transpired: "THE COURT: Do you waive the reading of the information? MRS. ROOT (Defendant's Counsel): We do. MR. LOUCKS (Deputy District Attorney): The People waive." As the amended information was the only information before the court at the time of the trial, it is evident that a reading thereof was expressly waived by appellant.

■ Appellant next contends that the district attorney was guilty of prejudicial misconduct. In this regard it appears that during the direct examination of appellant's wife when she appeared as a witness in his behalf, she testified that upon the return of appellant and the prosecutrix to the former's home on the date of the alleged offense, an argument ensued between appellant and the girl's father, during which appellant stated that he was going to call the police because of what the girl had related to him concerning the immoral acts committed by her father upon her person; and further, because of the fact that appellant himself was the father of a minor daughter whom he wanted to protect from similar treatment at the hands of complainant's father. The claimed misconduct of the district attorney occurred during the cross-examination of appellant's wife, wherein the following occurred:

"Q. You stated that Mr. Shack told Mr. ————, the father of . . . (the prosecutrix) . . . that he was going to report Mr. ———— to the police for what he had done to . . . (the prosecutrix) . . . because of his own daughter? A. Yes. Q. He had a daughter of his own? A. Yes. Q. And he wanted to protect her? A. That is right. Q. From any such criminal acts, is that correct? A. That is correct. Q. And, I take it, that your husband has always been alert to protect his children? A. That is right. MRS. ROOT (Defendant's Counsel): We will object to that on the ground that it is argumentative and calling for a conclusion. THE COURT: Perhaps it is.

"Q. BY MR. LOUCKS: Has your husband ever done that before? MRS. ROOT: We will object to that on the ground that it is calling for a conclusion. MR. LOUCKS: I would like to follow up this idea of protection. MRS. ROOT: You are doing what, then? MR. LOUCKS: Following up this protecting his daughter. MRS. ROOT: It is incompetent, irrelevant and immaterial. THE COURT: Be a little more specific. Q. BY MR. LOUCKS: Has your husband had occasion to——to have had occasion to complain of the (family of the prosecutrix) before in order to protect his daughter? MRS. ROOT: To which we will object, your Honor, as calling for a conclusion. THE COURT: That is a matter of argument, the protection of the daughter. MR. LOUCKS: She has testified positively that this was done to protect his own daughter, and I am permitted to prove that

he is not that type of man. MRS. ROOT: Just a minute. We will ask that counsel's statement——MR. LOUCKS: And I think I ought to be permitted to follow it up. It is evidence in the record. THE COURT: It is in the record, that is true, but it is a pure conclusion, and because one conclusion comes in the record there is no reason to fill it with conclusions. Drop it, Mr. Loucks. Q. BY MR. LOUCKS: Is it not a fact that your husband——is it not a fact that your husband was not interested in the moral welfare of your daughter? MRS. ROOT: To which we object on the ground it is incompetent, irrelevant and immaterial, argumentative, calling for a conclusion. THE COURT: I think the objection is good; sustained. Q. BY MR. LOUCKS: Is it not a fact that your husband has been convicted——MRS. ROOT: We object to that before it goes any further and call it misconduct on behalf of this District Attorney's deputy; that it is incompetent, irrelevant and immaterial, and certainly has no bearing on this case, and it is calling for a conclusion and it is hearsay. MR. LOUCKS: I want to rebut the statement that he wants to protect his daughter here. I have got evidence to rebut it. That is their own testimony. I don't see why it should stand in the record. I have evidence that is absolutely contradictory of that. Q. BY THE COURT: How old is Mr. Shack's daughter? A. Eight years old. Q. How old? A. Eight years old. THE COURT: The objection is sustained.''

While we must concede that the deputy district attorney exerted every effort within his power to commit prejudicial misconduct, by his persistence in asking immaterial and incompetent questions, nevertheless his efforts in that regard were successfully thwarted by the prompt and decisive rulings of the trial judge made upon the timely and appropriate objections interposed by defendant's counsel, all of which served to keep out of the record the improper testimony sought to be elicited by the prosecutor's challenged interrogatories. Time and again this court, in common with the other appellate tribunals of this state, has sought to impress upon prosecuting officers the importance of that rule of criminal procedure which declares that, guilty or innocent, a defendant is entitled to be tried according to recognized rules of evidence and procedure; that while a departure from such procedure may result in justice for the particular defendant before the bar, it is nevertheless dangerous to the community

and serves only to open the way for the conviction of the innocent.

In the instant case, however, not only did the trial judge constantly guard appellant's right to a fair and impartial trial, but when instructing the jury he admonished them that ". . . if any counsel has intimated by questions, which the court has not permitted to be answered, that certain things are, or are not true, you must disregard such questions and refrain from any inferences based upon them." It must be assumed that the jury heeded this admonition, not only with respect to the precise questions here set forth, but also as to any other questions of doubtful propriety respecting which objections were made and sustained by the court. (*People* v. *Burke*, 18 Cal.App. 72 [122 P. 435] ; *People* v. *Fodera*, 33 Cal.App. 8, 13 [164 P. 22].) While, as heretofore indicated, the questions were improper, the record shows that the court sustained defendant's objections to the same; and the record further shows that only upon one occasion did defendant's counsel assign the acts of the deputy district attorney as misconduct, but at no time was any request made of the court to admonish or instruct the jury to disregard the same. Notwithstanding this, however, the court gave the cautionary instruction heretofore quoted.

While there are cases wherein the misconduct is of such a character that an admonition from the court would not serve to effectually cure the injury and prejudice resulting therefrom, and in such cases a defendant is not required to ask the court to instruct the jury to disregard the questions so asked, the misconduct here set forth is not of that character, and it was therefore incumbent upon defendant to request the trial judge to so admonish the jury, if the district attorney's conduct was considered to be prejudicial. Therefore, the error, if any, must be held to have been cured by the foregoing instruction of the court in its final charge to the jury. Moreover, under section $4\frac{1}{2}$ of article VI of the Constitution, it would be our duty to affirm the judgment of conviction herein. The evidence in the case was clear and convincing against appellant, if the girl's story was true, and evidently the jury believed it. Furthermore, her testimony was corroborated in several respects by the police officer and the employee of the liquor store.

Appellant zealously argues that by reason of the aforesaid line of questioning by the deputy district attorney it was brought out that the former had been previously con-

victed of a similar offense. The record does not bear out this claim on the part of appellant, because in that regard it shows that all that was said was contained in the attempted interrogatory propounded by the deputy district attorney as follows: "Is it not a fact that your husband has been convicted. . . ." Before anything further was said in the asking of this question an objection was interposed and promptly sustained.

In next asserting that the evidence is insufficient to sustain the judgment, appellant urges that the testimony of the Juvenile Hall examining physician was to the effect that she had examined the girl the day after the alleged offense was committed; that while the hymen of the prosecutrix had been ruptured, it was not a recent rupture, and in the opinion of the physician the rupture had occurred more than ten days before the date of her examination. This testimony, however, simply tended to produce a conflict with the evidence given by the prosecutrix, who testified directly and positively to the occurrence of the act with which appellant was charged. The jury were properly instructed that so far as expert testimony was concerned, they were not bound to accept the opinion of any expert as conclusive (Pen. Code, § 1127b), and the testimony of the physician amounted only to an opinion tendered by her as an expert witness. The jury resolved this conflict against appellant, and their finding in this regard cannot be disturbed upon appeal where there was, as here, substantial evidence to sustain the conclusion arrived at by the triers of fact.

Appellant further contends that the verdict is contrary to law because after the jury had retired they returned into court for further instructions, at which time the jury inquired "as to the degree involved in the type of sentence which we can bring back," to which the court replied, "There is no degree involved." After some further colloquy between members of the jury and the court, the latter said, "Wait, and I will read it to you right out of the law. . . ." Thereupon the court read to the jury section 264 of the Penal Code, which empowers the jury, in cases of the character with which we are here concerned, in the event they find the defendant guilty, to recommend by their verdict whether the punishment shall be by imprisonment in the county jail or in the state prison. A reading of the record completely refutes appellant's claim that because the jury made inquiry

concerning the punishment, they were without knowledge as to the particular offense with which he was charged. On the contrary, the record clearly discloses that the jury's inquiry went simply to the question of what was the more severe punishment, a county jail or a state prison sentence.

■ Finally, appellant urges that the judgment entered against him was not the judgment rendered and ordered by the court. In support of this claim it is urged that the oral judgment pronounced by the court was that appellant be imprisoned in the state prison for the term prescribed by law, while the judgment entered by the clerk included the charge of prior conviction and appellant's admission thereof, neither of which were mentioned in the oral judgment of the court. There is no merit to this claim, because section 1207 of the Penal Code requires of the clerk that in entering the judgment he must state "briefly the offense for which the conviction was had and the fact of a prior conviction, if any." The clerk complied with this section, and there was no legal necessity for the court to include any mention of the prior conviction in pronouncing the oral judgment from the bench.

For the foregoing reasons, the judgment and the order denying defendant's motion for a new trial are, and each is, affirmed.

York, P. J., and Doran, J., concurred.