[Crim. No. 4173.   Second Dist., Div. Two.   Mar. 25, 1948.]

THE PEOPLE, Respondent, v. DOUGLAS GOLDSTEIN, Appellant.

A. Brigham Rose for Appellant.

Fred N. Howser, Attorney General, and Henry A. Dietz, Deputy Attorney General, for Respondent.

MOORE, P. J.—Appellant was accused of grand theft in count 1 of the information, of extortion in count 2 and of attempted extortion in count 3. A jury acquitted him of count 1 which was a charge of grand theft based upon the same facts recited in count 2, but he was convicted of counts 2 and 3. His motion for a new trial having been denied he now appeals on the grounds (1) of the insufficiency of the evidence; (2) misconduct of the court and the district attorney; (3) insufficiency of the information; (4) violation of his rights to due process of law; (5) the court's rulings in permitting inflammatory and irrelevant matter based upon bias and prejudice; (6) denial of a new trial.

### THE PEOPLE'S EVIDENCE

In January, 1947, the prosecutrix resided with her son in a single apartment in the city of Los Angeles. Early in that month she answered the telephonic call of a man who identified himself as a friend of an officer known to her and who asserted knowledge of a physician who could bring relief from her sinus infection. Replying to her statement that she was going to have an operation and to her complaints of inability to be out of bed, he volunteered to call the next time he would be in the neighborhood. Thereafter and prior to January 31 he called her by telephone, each time called himself "Phil," inquired concerning her health and that of her mother and closed his unseen visit with the promise to "call on you the next time I am in the neighborhood."

On the last mentioned date about 10 a. m. the prosecutrix answered a knock at her door and for the first time met appellant. He introduced himself as Phil and said: "How are you feeling? I just spoke to you on the phone. I am in the neighborhood and I want to come in and talk to you." After she inquired about the doctor whom he had offered to recom-

mend for her he abruptly asked who was the man that had just left her apartment. When she replied it was her friend who had had breakfast with her he asked her how much money the friend had left. He then displayed a policeman's badge and said: "I am from the vice squad. Get your clothes on. You are going with me. Well, you will understand when we get down to the vice squad. Get dressed and come with me." While she was in the course of dressing preparatory to her visit to the vice squad appellant interrupted by walking into her room where he said: "I am going to do something nice for you. How much money do you have?" When she replied, "Thirty or forty dollars," he demanded it. She counted out $42 from her purse which appellant took from her hand, saying: "Why, that is chicken feed. . . . Ordinarily, knowing the people that you know, I should get a thousand dollars. Can you have me $300 in the morning? I know you have a son and you have a nice family. . . . Can you have $300 for me in the morning? After she told him that she knew no one but her family and would not see them until the weekend, he replied: "Well, can you have it by Monday? . . . If you don't I am going to spread your name and his all over the front page of the paper." On her promise to try he bade her good-bye with the words, "I will see you Monday."

The foregoing constitutes the total evidence adopted by the jury as proof of the second count with the exception of the subsequent events in so far as they relate to those of his obtaining the $42. However on the same day by telephone he requested her permission to call at 1:30 p. m. That request she refused.

She reported the foregoing incidents to the police who arranged for two officers to be present to greet appellant on his promised visit at 9 a. m. on Monday, February 3. At an early hour of that day appellant telephoned to ask whether she had the $300. To her affirmative answer he said: "Why I called you is my buddy is going to call you. He will use the same name that I am using which is Jim. When Jim calls you, instead of telling him three you tell him $150." She replied: "Oh, you want the other $150 for yourself, is that it?" His answer was: "That is right; will you do that for me? I will call you in a few minutes." At 8:45 he telephoned that he would be right over. The two officers having arrived, put $100 in marked currency in the prosecutrix' hands and concealed themselves. On entering her abode appellant searched the apartment cautiously with an air of suspicion and finally dis-

covered Officer Shields in the clothes closet. After the two men had exchanged salutations the officer displayed his badge and appellant said he was looking for "her husband"; that he was her friend. On producing his identification the lady learned his true name for the first time and asked why he did not show them the badge he had exhibited to her. In reply to further questions appellant attempted to convey the idea that he had come for the sex relation. He was then placed under arrest.

## Evidence Sufficient

■ Appellant denied all of the material testimony of the prosecutrix but he did not contradict that of the two officers as to the events of February 3. However, the jury having determined the facts against him, his testimony cannot be considered on review merely because it conflicts with that of the prosecutrix. (*People v. Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) The Newland decision leaves no room for argument that even where the evidence is circumstantial the appellate court cannot reverse a judgment approved by the trial court unless "upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below." Where the circumstances of the apprehension of the accused and the testimony of the prosecutrix concerning antecedent events are consistent with the guilt of the accused the jury's implied finding of his guilt will not be disturbed by the reviewing court. (*Ibid.*)

■ ■ The sole testimony of the victim as to appellant's obtaining the $42 is substantial proof of that event. The only rational attack upon the verdict as to the second count is that the sole inference from her testimony is that the money was taken from her without her consent, which would make appellant's act grand theft. Notwithstanding she testified that "he reached over and took the $42 out of my hand," it was not an unfair deduction that appellant took the money with her consent with the understanding that by his taking it she was to save herself from disgrace or from an injury to her reputation. (*People v. Peck,* 43 Cal.App. 638, 645 [185 P. 881].) When the jury determined that she thus consented to the taking, *eo instante* they acquitted him of grand theft and found him guilty of extortion. The events of that morning leave no cause for doubting the correctness of the jury's inference that the woman was intimidated by the threat of arrest or unfavorable publicity and by reason thereof yielded to appellant's demands. The question of consent is itself a fact for the

jury, to be determined from the circumstances as well as from the testimony of the prosecutrix. The victim of an extortioner might openly consent to the taking of his money "and yet protest in his own heart" against its being taken. (*People* v. *Peck, supra.*) The requirements of the statute (Pen. Code, § 518) are that property may be obtained from another with his consent "by a wrongful use of force or fear," by a threat to accuse him or any relative of a crime, or to expose or impute to him any disgrace or crime, or to expose any secret affecting him or them. (*Ibid.*, § 519.) From the utterances of appellant immediately prior to his taking the $42 it was a reasonable inference that the prosecutrix counted out the money to him to save herself from some accusation in a newspaper of a crime or of disgraceful conduct or from an exposure of a secret affecting her. (*People* v. *Peck, supra.*) Want of proof that the prosecutrix had committed a crime does not in the slightest minimize appellant's guilt. A person's fear of a threat to prosecute him for crime or to publish defamatory matter concerning him can be effective in causing him to pay money to an extortioner. (*People* v. *Francisco*, 112 Cal.App. 442, 444 [297 P. 34].) The proof supports the conviction of count 2.

### ATTEMPTED EXTORTION

As to the attempted extortion the evidence is equally convincing. Appellant's enthusiasm for the enterprise never abated. At the first meeting on January 31, he emphatically demanded that the prosecutrix procure an additional $300 for him by Monday, the third of February, and declared the dire consequences to follow in event of her failure to have that sum for him. Not content with his demand while there he telephoned her during the noon hour requesting that he might call at once. By his early telephonic call on Monday his request indicated that a fellow "officer" was a party to his scheme but that he himself should have the lion's share. He followed this up by his personal call which the jury were justified in inferring was in furtherance of his demand for $300. If the narrative of the prosecutrix' experience with appellant was true as the jury believed, could there be any doubt in their minds that he failed to collect the $300 solely because of the officers' interference? The facts proved and the reasonable inferences therefrom fairly justify the deduction of his intent to extort $300. (*People* v. *Robinson*, 130 Cal.App. 664, 668 [20 P.2d 369]; *People* v. *Francisco, supra.*) The evidence justifies the implied finding that by his threats

to publish some real or fancied story of her relations with a man he intimidated her, and that his failure to victimize her was due to the presence of the police or to her poverty: certainly not to a change of heart by him.

Appellant cites *People* v. *Miller,* 2 Cal.2d 527, 530 [42 P.2d 308], to show, and he argues, that mere intention to commit a crime is not the equivalent of an attempt; that preparation alone is not sufficient; that the act "must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation"; that neither intent alone nor an act alone will constitute an attempt; that there must be some overt act in part execution of the criminal intent. Nothing is to be found in the Miller case that is calculated to efface appellant's crime or to reduce its degree of depravity. The court adopted also Wharton's language: "There must be some appreciable fragment of the crime committed, and it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter." A fragment of appellant's offense was established by the proof of his visit, his declaration and exhibition of a badge of authority, and his threat to publish an act of his victim unless she paid him money. His engagement to return to her apartment at a specified time and his telephonic calls with reference to the money and the hour of his coming are evidences of the progress of the crime. That its failure to be consummated was due to circumstances independent of appellant's will was a reasonable deduction by the jury. The finding that his coming to her home at the hour appointed was his overt act in furtherance of his declared purpose did not over-exercise the credulity of the jury.

It is contended that there was no proof of any crime the prosecutrix had committed of which he might accuse her. Proof of a crime by her was not essential to his guilt. His offense inhered in his threat to accuse her of a crime unless she paid him the money demanded. A false accusation of crime is often as harmful as one that is true. To threaten the publication of either for nonpayment of money is extortion. (Pen. Code, §§ 518, 519.)

### Conduct of the Prosecutor

Appellant's assignments of misconduct of the prosecutor in the cross-examination and argument as prejudicial are without substantial basis. He says there is no evidence that appellant intended to accuse the prosecutrix of violating the Penal

Code. To designate specific acts is not the sole method practiced by the extortioner as his means of terrifying his prey. He reckons on the possibility that there might be some secret in the life of his intended victim of a nature more serious than that which he might propose. Thus he may accomplish his aims without incurring the risk attendant upon accusing his intended victim of a specific crime.

▇ He contends that his cross-examination by the prosecutor developed his testimony in such a manner as unfairly to create an impression of his relations with the prosecutrix and thereby to cause him serious prejudice. The cross-examination of appellant was no more than to review the matters developed from appellant on his direct testimony. This procedure was in accordance with the Penal Code, section 1323. The cross-examination may extend to the whole transaction of which the witness has on direct examination given a part, and which occurred in immediate connection with the part he has related, "shortly before or after, and in which he must have been concerned, or of which he may be reasonably supposed to have had knowledge." (*People* v. *Teshara,* 141 Cal. 633, 638 [75 P. 338].) Such rule does not violate the right of due process of a person accused of crime. Otherwise he might conceal the blood of his victim with his left hand while denying the truth with his right pointing upward. After appellant had denied the conversations detailed by the prosecutrix and related such as he chose to tell, the range of proper cross-examination encompassed his total knowledge of the events recited by himself or which he had categorically denied. (*People* v. *Mayen,* 188 Cal. 237, 253 [205 P. 435, 24 A.L.R. 1383]; Fricke's California Criminal Evidence, p. 97; *People* v. *Marsh,* 120 Cal.App. 630, 633 [8 P.2d 550].)

▇ Neither were the remarks of the prosecutor so intemperate in their application to the accused as to be classified as prejudicial. An examination of the argument of the deputy district attorney discloses no comment not warranted by the evidence. The two sentences of the state's counsel that evidently irked appellant are these: (1) "His conscience was guilty"; (2) "This is the man that tells us he is a cheater." Even though such statements had been error the assignment would not avail appellant. At no time in the course of the argument criticised did he object, assign the remarks as prejudicial or request an instruction that they be disregarded. Having neglected thus to direct the attention of the trial judge by specifying his particular objection or by entering

his protest at a statement of the district attorney curable by an instruction, his silence then will now be deemed a perpetual waiver of the alleged misconduct. (*People* v. *Shack*, 55 Cal.App.2d 16, 20 [130 P.2d 197] ; *People* v. *Gray*, 52 Cal. App.2d 620, 659 [127 P.2d 72] ; *People* v. *Montgomery*, 47 Cal.App.2d 1, 20 [117 P.2d 437] ; *People* v. *Marvich*, 44 Cal. App.2d 858, 863 [113 P.2d 223].)

## No Misconduct of Trial Judge

██ Certain statements of the court are assigned as prejudicial. After Officer Shields had on cross-examination displayed his badge and testified that not all shields used by the Los Angeles Police Department are of the same type as that used by him, appellant's counsel exhibited the shield to the jury. The witness then testified that he had shown his shield to appellant after the two had conversed in the closet where the officer had waited. On redirect examination the witness testified that he had another police badge which he then produced and testified that it also was a badge of the Los Angeles Police Department, which policemen wear. The court then interposed: "I suggest, in view of the fact the jury has viewed one of them, the other should be handed to the jury in all fairness to them." The court's remark is assigned as error as well as the subsequent overruling of appellant's objection to the introduction of the shield. In support of such assignments appellant cites *People* v. *Boggess*, 194 Cal. 212, 239 [228 P. 448]. This case is not pertinent. Boggess was on trial for violating the Corporate Securities Act. After his report as receiver of a mine had been received in evidence the court read from and commented upon its contents adversely to the defendant. While the court's remarks would not be in good taste at the present time, that trial was over 10 years prior to the adoption of section 19 of article VI of the Constitution which authorizes the trial judge to "comment on evidence, testimony and credibility of any witness." The other authorities cited (*People* v. *MacDonald*, 167 Cal. 545, 551 [140 P. 256] ; *People* v. *Soeder*, 150 Cal. 12 [87 P. 1016] ; *People* v. *George*, 72 Cal.App. 124 [236 P. 934] ; *People* v. *Frank*, 71 Cal.App. 575 [236 P. 189]) are also antedeluvial. The court's statement was not prejudicial in any respect.

## Information Is Sufficient

██ Appellant contends that the information was insufficient in that it "failed to set out the specific injury threatened," citing *People* v. *Schmitz*, 7 Cal.App. 330 [94 P.

407, 15 L.R.A. N.S. 717]. Section 950 of the Penal Code prescribes the form of an information, and section 950, subdivision 2, specifies that its contents shall be "[a] statement of the acts . . . in ordinary and concise language . . . to enable a person of common understanding to know what is intended." The language of the pleading at bar in each count thereof leaves no doubt of the pleader's intention. It is so phrased and its diction so appropriate as to make its meaning readily understandable by a person of common understanding. This suffices. (*People* v. *Lavine*, 115 Cal.App. 289, 296 [1 P.2d 496]; *People* v. *Mahony*, 145 Cal. 104, 109 [78 P. 354].)

### ADMISSION OF TELEPHONIC CONVERSATION NOT ERROR

Appellant complains that without preliminary foundation the prosecutrix was permitted to testify that she had spoken to appellant over the telephone on a half dozen occasions prior to their meeting. Appellant appears to base his objection to the admission of the telephonic conversations upon the fact that the subject of such conversations related to her health and to that of her mother and to an alleged mutual friend. The subjects discussed by a person over the telephone have little to do with establishing the identity of the other party by the witness. The prosecutrix testified substantially that the same person who had talked with her before called her a few minutes prior to appellant's appearance and made an engagement to visit her immediately. Appellant's prompt arrival; his immediate discussion of the topics which she had previously discussed with the unseen person; his use of phrases and words which the strange voice had used in speaking with her; his immediate commencement of inquiry as to how the prosecutrix felt: these facts showed a sufficient familiarity of the witness with the party to entitle her to identify appellant as the person with whom she had held the several telephonic conversations. (See *People* v. *Albritton*, 110 Cal.App. 188, 195 [294 P. 76].)

### THE OTHER ASSIGNMENTS

No act is specified as a violation of the right of due process except the cross-examination of appellant and the remarks of the prosecutor. Nor has a perusal of the prosecutor's cross-examination of appellant and of his argument to the jury disclosed that the rights of appellant, guaranteed by the federal Constitution (Amendments V and XIV) have been disregarded. It is true that the cited amendments guarantee the observance of procedural standards in all courts

for the protection of the rights of persons accused of crime (*Chambers* v. *Florida,* 309 U.S. 227, 238, 241 [60 S.Ct. 472, 84 L.Ed. 716]) and that such standards are sacrosanct under the pronouncements of the United States Supreme Court. Indeed, where a federal right has been specially asserted—when the issue of due process is advanced—it is the duty of an appellate court independently to search the record and inquire not merely whether such right was expressly denied by the trial court but also whether it was denied in substance and effect. Unless such inquiry be made an appeal might fail to protect sacred rights. Furthermore, even though the constitutional protection be denied because the cited amendments have not been specifically violated, it is still obligatory upon the court of appeal to inquire whether the judgment rests upon a fair and substantial basis and, if not, so to declare. (*Norris* v. *Alabama,* 294 U.S. 587, 589 [55 S.Ct. 579, 79 L.Ed. 1074]; *Broad River Power Co.* v. *South Carolina,* 281 U.S. 537, 540 [50 S.Ct. 401, 74 L.Ed. 1023]; *Demorest* v. *City Bank Farmers Trust Co.,* 321 U.S. 36, 42 [64 S.Ct. 384, 88 L.Ed. 526]; *Lisenba* v. *California,* 314 U.S. 219, 236 [62 S.Ct. 280, 86 L.Ed. 166]; *Chambers* v. *Florida, supra.*) However, under neither principle was appellant herein denied a fair trial nor was any of his procedural rights violated. He is the object of a verdict by a jury of his peers, following a trial conducted with fair regard for the orthodox amenities. Therefore the denial of his motion for a new trial was not prejudicial error.

The judgment and order are affirmed.

McComb, J., and Wilson, J., concurred.

A petition for rehearing was denied April 2, 1948, and appellant's petition for a hearing by the Supreme Court was denied April 22, 1948.