BROAD RIVER POWER COMPANY ET AL. *v.* SOUTH CAROLINA EX REL. DANIEL, ATTORNEY GENERAL.

No. 528.   Argued May 2, 1930.—Decided May 19, 1930.

*Mr. William Marshall Bullitt,* with whom *Messrs. C. Edward Paxson, George M. Le Pine,* and *W. C. McLain* were on the brief, for petitioners.

*Messrs. Cordie Page,* Assistant Attorney General of South Carolina, and *Irvine F. Belser,* with whom *Messrs. John M. Daniel,* Attorney General, *C. T. Graydon, W. S. Nelson, E. W. Mullins,* and *H. N. Edmunds* were on the brief, for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

This case is here on certiorari, 280 U. S. 551, to review a judgment of the Supreme Court of South Carolina, adjudging the petitioners, the Broad River Power Company and its subsidiary, the Columbia Railway Gas & Electric Company, to be jointly responsible for the operation of an electric street railway system, in Columbia, South Carolina, and directing them to resume its operation, which they had abandoned. The proceeding, in the nature of mandamus, was brought in the state Supreme Court to compel the operation of the system by petitioners. By their answer they set up that the railway was being operated by the Railway Company at a loss under a franchise separate and distinct from the franchise to make and distribute electric light and power of the Broad River Power Company, whose business is concededly profitable; that the continued operation of the railway under compulsion of the court would deprive respondents of their property without due process of law in violation of the Fourteenth Amendment of the Federal Constitution.

540

The Supreme Court, upon consideration of the evidence taken before a referee, held (a) that although the books of the street railway showed large financial losses, it could be operated at a profit if properly managed; (b) that the charter and certain city ordinances under which the street railway system was constructed and operated, and certain extension-line and right-of-way agreements, are effective as contracts imposing on petitioners a duty to operate the system; and, (c) that the privilege of operating the street railway is inseparable from that of operating the electric power and light system, and that together they constitute a unified franchise, which cannot be abandoned in part and retained in part without the consent of the state; that so long as respondents retain and operate their electric power system they cannot be permitted to abandon their street railway system. Each of these conclusions is sharply challenged by respondents, but, in the view we take, only the third need be considered here.

Whether the state court has denied to rights asserted under local law the protection which the Constitution guarantees is a question upon which the petitioners are entitled to invoke the judgment of this Court. Even though the constitutional protection invoked be denied on non-federal grounds, it is the province of this Court to inquire whether the decision of the state court rests upon a fair or substantial basis. If unsubstantial, constitutional obligations may not be thus evaded. *Fox River Paper Co.* v. *Railroad Commission of Wisconsin,* 274 U. S. 651, 655; *Ward* v. *Love County,* 253 U. S. 17, 22; *Enterprise Irrigation District* v. *Canal Co.,* 243 U. S. 157, 164. But if there is no evasion of the constitutional issue, *Nickel* v. *Cole,* 256 U. S. 222, 225; *Vandalia Railroad* v. *City of South Bend,* 207 U. S. 359, 367; and the non-federal ground of decision has fair support, *Fox River Paper Co.* v. *Railroad Commission, supra,* 657; *Enterprise Irrigation District* v. *Canal Co., supra; Leathe* v. *Thomas,*

207 U. S. 93; *Vandalia Railroad Co.* v. *City of South Bend, supra; Sauer* v. *New York,* 206 U. S. 536, this Court will not inquire whether the rule applied by the state court is right or wrong, or substitute its own view of what should be deemed the better rule, for that of the state court.

The predecessor in interest of the Columbia Electric Gas & Railway Company, the petitioner, was incorporated in 1890 by special act of the legislature, S. C. Acts of 1890, p. 969, under the name of Columbia Electric Street & Suburban Railway & Electric Power Company, later changed to The Columbia Electric Street Railway Light & Power Company, called the Consolidated Company and, still later, in 1911, changed to its present name. Its corporate life was fixed at thirty years and it was given power, upon the consent of the city council, to construct or acquire railway tracks through any streets of the City of Columbia, to extend them into the country a distance of five miles from the state capital, and to operate cars with electric power over its tracks for the transportation of passengers and freight and to contract for and provide electric power for any other purpose. The act was continued in force provided the " Company begins to operate its railways in said city within five years."

An act of December 16, 1891, S. C. Acts of 1891, p. 1453, authorized the consolidation of this company with the Congaree Gas & Electric Company. The latter had been incorporated under the Act of December 24, 1887, S. C. Acts of 1887, p. 1103, for a period of thirty years, with the power, not now involved, to manufacture and distribute gas, and power to sell and distribute light, power and heat " made from electricity," and for that purpose, subject to municipal ordinances, to erect poles and conductors. The Consolidation Act recited that these two companies had agreed to consolidate their franchises and privileges and authorized them to do so by

transfer of their property, franchises, and privileges by deed of indenture to the new consolidated company. This company was incorporated for fifty years, with the usual corporate powers. The act provided that it should be vested with the franchises and subject to the liabilities of the consolidated companies. It was also authorized to acquire the property and franchise of the Columbia Street Railway Company, incorporated for thirty years by Act of February 9, 1882, with a franchise to operate horse cars over tracks in the city streets.

The consolidation was effected as authorized. The Consolidated Company acquired the line of street railway of the horse car company, established electric power plants and, under authority of City Ordinance, §§ 561, 562, of 1892, laid additional tracks and electrified the system by erecting poles and wires in the streets, also, so far as practicable, using them and its rights of way in its electric light and power business. From the organization of the Consolidated Company until 1925, both the street railway and power business of the Consolidated Company were expanded as a single business, its capital stock was increased from time to time, and the system of accounts was such that it did not disclose whether its power system was constructed more from the proceeds of its street railway or its power business.

Certain facts in this recital of corporate history are of persuasive if not controlling significance in determining the status of the franchise of the Consolidated Company. The Consolidated Company was a new corporation. Its franchises and privileges were granted for its corporate life, extending beyond the duration of the franchises of the two companies consolidated, all of which would have expired before 1921. It had acquired the franchises of the two consolidated companies, one in terms a franchise to operate a railway and a power system, the railway system being for practical purposes dependent upon the

power system for its operation, and the privilege of operating both being conditional upon the establishment of the railway system within five years. The Consolidation Act plainly looked to a consolidation of the franchises by the two companies. None of the special legislative acts defining the privileges conferred upon these several corporations contains any words affirmatively providing that any part of the privileges granted should be deemed separable, or that they might be exercised independently of any other.

The Supreme Court of South Carolina, in referring to this corporate history and the effect of the Consolidation Act said: "When the new company, in compliance with this Act, effected the consolidation and in pursuance of the provisions of the Act built, constructed and operated its electric railway and power properties as parts of one business for nearly forty years, these rights, powers and privileges became inseparably bound together and cannot be separated. As contended by the petitioners [respondents here], such diversity as there was in the conditions of the former franchises became obliterated and extinguished by the major purpose of the new act, namely, the consolidation of all the powers in one company for the greater benefit of the public."

In the light of the familiar rule that franchises are to be strictly construed, and that construction adopted which works the least harm to the public, see *Blair* v. *Chicago*, 201 U. S. 400, 471; *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659, 666; *Slidell* v. *Grandjean*, 111 U. S. 412, we cannot say that this interpretation of statutes of the State of South Carolina, by its highest court, so departs from established principles as to be without substantial basis, or presents any ground for the protection, under the Constitution, of rights or immunities which the state court has found to be non-existent. It follows that it was within the constitutional power of the State to refuse to

permit any partial abandonment of the consolidated franchise. *United Fuel Gas Co.* v. *Railroad Commission of Kentucky,* 278 U. S. 300, 308; *Fort Smith Light & Traction Co.* v. *Bourland,* 267 U. S. 330; *Puget Sound Traction Co.* v. *Reynolds,* 244 U. S. 574; *Ches. & Ohio Ry.* v. *Public Service Comm.,* 242 U. S. 603; *Mo. Pac. Ry. Co.* v. *Kansas,* 216 U. S. 262, 277. See *Woodhaven Gas Light Co.* v. *Public Service Comm. of N. Y.,* 269 U. S. 244; *N. Y. & Queens Gas Co.* v. *McCall,* 245 U. S. 345; *Atlantic Coast Line* v. *North Carolina Corporation Commission,* 206 U. S. 1, 25.

*Brooks-Scanlon Co.* v. *Railroad Comm.,* 251 U. S. 396, upon which petitioners rely, is not apposite. It was there held that where a railroad serving the public is owned and operated by a corporation which also conducted a private business, it is the business of the Railroad and not the entire business of the Company which determines whether the Railroad franchise may be abandoned as unprofitable. The private business was not devoted to a public use or a part of the public franchise. Nor, as petitioners contend, are we here concerned with the rule that a public service company may not be compelled to serve, even in a branch of its business, at a rate which is confiscatory. See *Northern Pacific R. R. Co.* v. *North Dakota,* 236 U. S. 585. The order compelling petitioners to serve does not involve a determination whether or not the rate is confiscatory, nor does it foreclose a consideration of that question upon appropriate proceedings. *Woodhaven Gas Light Co.* v. *Public Service Comm'n of N. Y., supra,* 249.

But petitioners contend that, even if the franchise of the Consolidated Company be deemed a unified one, the privilege of operating the street railway system was separated from the franchise to operate the power system by the corporate reorganization under the so-called Merger Act of March 19, 1925, S. C. Acts of 1925, p. 842.

The passage of this Act was procured by those interested in promoting the interests of the Consolidated Company and its subsidiaries, apparently for the purpose of facilitating the financing of the power business apart from the street railway business. It is entitled "An Act to authorize" the Consolidated and six other named companies, or any of them, "to merge, consolidate or sell, transfer and convey all or any part of their respective properties, assets, franchises, and charter or other rights to one or more of them or to the Broad River Power Company . . . and to authorize the Broad River Power Company . . . or any one or more of them to merge, consolidate or purchase the same, and to vest in the said Broad River Power Company or any other of said companies the property, assets, franchises and charter or other rights so sold, transferred, conveyed, merged, consolidated or purchased . . ." Section 1, entitled "Merger of certain corporations authorized," permits the named companies or any of them "to merge or consolidate with or to sell, transfer and convey to any one or more of them or to the Broad River Power Company all or any part of their respective properties, assets, franchises . . . and each and every of said companies and the Broad River Power Company are hereby authorized to merge and consolidate with or to purchase and to receive and hold all or any part of the properties, assets, franchises . . . so sold, transferred and conveyed. . . ." Section 2 declares "that in furtherance of the purpose of § 1 . . . all franchises heretofore granted by the state to any of the said companies may be transferred and assigned in pursuance of the provisions of § 1 of this Act," and that the company to which the transfer is made "shall hold the same with all the rights, powers and privileges granted to the original holder thereof, subject only to the restrictions, requirements and conditions in said franchises contained."

The Broad River Power Company had been organized in July, 1924, for the purpose of acquiring the entire outstanding capital stock of the Consolidated Company. Proceeding under the Merger Act, all the property and franchises of the six subsidiaries, excepting only the street railway property and so much of its franchises as authorized it to operate and maintain its street railway system, were vested in the Broad River Company. That company thus acquired the entire power business, leaving only the street car business and property in the Consolidated Company. The deed, however, expressly conveyed to the Broad River Power Company all its poles, including those used for the street railway, which carried both the trolley wires for the operation of the street railway and those for the transmission of other electric power. The Broad River Power Company then issued its own stock to the extent of approximately three and a half million dollars in exchange for the common stock of the Consolidated Company and one of its subsidiaries, and for certain cash subscriptions. After the acquisition of the common stock of the Consolidated Company by the Broad River Company, the capital stock of the former was reduced to a relatively nominal amount, all of which was held by the Broad River Company except 190 shares of preferred stock which remained outstanding. The record indicates that the petitioners have deposited a fund in a special bank account for the retirement of this stock. Since this reorganization the same persons have been executive officers of the Broad River Company and the Consolidated Company, and for all practical purposes the railway business of the Consolidated Company has been carried on as a branch or department of the Broad River Power Company.

Upon these and more detailed findings of fact, both the referee and the state court held that the reorganization resulted in a merger by which all the properties and

franchises of the several companies concerned were brought under the complete domination and control of the Broad River Power Company, which carried on the street railway branch of its business through the merely nominal agency of the Consolidated Company. For that reason the Supreme Court reached the conclusion that there had been no effective splitting up of the franchise or the public obligations of the Consolidated Company, and that they had devolved upon the Broad River Power Company, which was liable to carry out the obligation of the Columbia Gas & Electric Company to furnish an electric street railway service.

But we need not consider this aspect of the case, for we think that there was substantial basis for the further conclusion of the state court that the Merger Act cannot be taken to authorize the breaking up of the unified franchise of the Consolidated Company in such manner as to relieve it or any successor company from its duties and obligations as they existed before the merger. Nowhere in this legislation is there any affirmative disclosure of a purpose to relieve any of the corporations of existing duties and obligations or to enlarge their privileges. As appears from the title of the act and also that of § 1, the dominant purpose was to effect a merger or consolidation. The authority given by § 1 to transfer "all or any part" of the franchises affords but slender basis for the argument that there was any purpose to effect such a separation. The use of this phrase seems only subsidiary to the dominant purpose to authorize a merger or consolidation. It is not repeated or in terms referred to in § 2, which deals with franchises, and it is declared to be in furtherance of the purpose of § 1. In any case, the limitation in this section that the company acquiring any franchise shall take it subject to existing restrictions, requirements and conditions may, we think, reasonably be deemed to preclude the possibility of relieving from franchise duties

and obligations when no such purpose is disclosed in the body of the legislative act.

The very fact that legislative acts of this character are commonly prepared by those interested in the benefits to be derived from them, and that the public interest requires that they should be in such unequivocal form that the legislative mind may be impressed with their character and import so that privileges may be intelligently granted or purposely withheld, has firmly established the rule that they must be strictly construed, and that any ambiguity or doubts as to their meaning and purpose must be resolved in favor of the public interest. See *Blair* v. *Chicago, supra,* 471; *Fertilizing Company* v. *Hyde Park, supra,* 666. " The rule is a wise one; it serves to defeat any purposes concealed by the skillful use of terms to accomplish something not apparent on the face of the Act and thus sanctions only open dealing with legislative bodies." *Slidell* v. *Grandjean, supra,* 438.

We conclude that the judgment below is supported by a state ground which we may rightly accept as substantial.

*Dismissed.*