## CRAWFORD v. DULUTH ST. RY. CO.

## CITY OF SUPERIOR et al. v. MITCHELL.

### No. 4618.

Circuit Court of Appeals, Seventh Circuit.
June 30, 1932.

L. R. McPherson, of Superior, Wis., for appellant City of Superior.

John W. Reynolds, Atty. Gen., and Samuel Bryan, Asst. Atty. Gen., for appellant State of Wisconsin.

W. P. Crawford and Crawford & Crawford, all of Superior, Wis., and Mitchell, Gillette & Carmichael, of Duluth, Minn., for appellee.

Before ALSCHULER and SPARKS, Circuit Judges, and WILKERSON, District Judge.

ALSCHULER, Circuit Judge (after stating the facts as above).

The receiver in custody of the street railway property applied to the court for authority to abandon service on certain branch lines and to substitute bus service therefor. His showing, which is conceded on this appeal, is that the actual operating expenses of those branch lines exceeded their earnings; and that, under existing circumstances, it is impossible to operate them so as to cover expenses. He further showed that, if operations are continued on the branches, the whole system will be operated at a loss. It is not possible, without depleting the property in the custody of the receiver (even if money could be raised in that way), to continue the service. The receiver must either abandon the branches or shut down operation on the whole system.

Appellants assert that the District Court was without jurisdiction to hear the petition and grant relief thereon. With this we cannot agree. The property had been drawn into the custody and control of the court. The receiver was entitled to the instructions of the court as to its operation. The city and the state having intervened, it was proper for the court to determine the questions of confiscation presented. The controversy had relation to the property in the custody of the court, and, in justice to the parties before the court, ought to be determined in the principal proceeding. Central Union Trust Co. v. Anderson County et al., 268 U. S. 93, 96, 45 S. Ct. 427, 69 L. Ed. 862; Hoffman v. McClelland, 264 U. S. 552, 558, 44 S. Ct. 407, 68 L. Ed. 845. The court, of course, in giving instructions to the receiver, is bound by the federal statute which requires the receiver to manage and operate the property according to the valid laws of the state in which such property is situated, in the same manner that the owner would be bound to do if in possession thereof. 24 Stat. 554, § 2, Jud. Code § 65 (U. S. Code Ann., title 28, § 124).

Counsel for the receiver argues that the indeterminate franchise law operated to extinguish the provisions of the ordinance as to continuous operation. The Supreme Court

of Wisconsin has drawn a distinction between a surrender of a street car franchise and that of other utilities. City of Oshkosh v. Eastern Wis. E. Co., 172 Wis. 85, 90, 178 N. W. 308; Calumet Service Co. v. Chilton, 148 Wis. 334, 354, 135 N. W. 131; La Crosse v. La Crosse Gas & Electric Co., 145 Wis. 408, 423, 130 N. W. 530. When it becomes necessary in a federal court to consider whether a state is depriving or attempting to deprive a litigant of property without due process of law in violation of the Fourteenth Amendment and the question turns on the existence and terms of an asserted contract, that court determines for itself whether there is a contract, and its terms. Railroad Comm. of Texas v. Eastern Texas Railroad Co. et al., 264 U. S. 79, 86, 44 S. Ct. 247, 68 L. Ed. 569. While the position of the receiver is not to be put aside lightly, the decision of the case, in our opinion, does not turn upon it, and we shall dispose of the case on the theory that the provisions of the ordinance as to continuous operation have not been affected by the surrender.

The provision of the ordinance applicable to the branch lines provides that "such new lines after being constructed and placed in operation shall be maintained and operated by said railroad company." The provisions of this ordinance do not operate to create a contract which requires the company to operate when operation means confiscation. In the absence in the ordinance of an express prohibition against abandonment, it was stated in State of Texas v. Eastern Texas R. Co. (D. C.) 283 F. 584, 593: "The law reads into the contract a proviso, which says: 'The railroad may terminate this contract, and withdraw its property from public use, unless compensated, or there is a reasonable future prospect thereof.'" The right to abandon a railway system when the operation results in a loss and amounts to confiscation has been repeatedly upheld. Railroad Comm. of Texas v. Eastern Texas Railroad, supra; Bullock v. Florida ex rel. Railroad Comm. of Florida, 254 U. S. 513, 520, 41 S. Ct. 193, 65 L. Ed. 380; Brooks-Scanlon Co. v. Railroad Comm., 251 U. S. 396, 40 S. Ct. 183, 64 L. Ed. 323. And the same principle has been applied to a branch of a system when the entire system is being operated at a loss. Brooks-Scanlon Co. v. Railroad Comm., supra.

Conceding the force of the above decisions and admitting the right of the receiver to abandon the entire system, appellants invoke the Wisconsin statute which forbids the abandonment of any part of a street railway without the consent of the city. Reliance is placed upon Fort Smith Light & T. Co. v. Bourland, 267 U. S. 330, 45 S. Ct. 249, 69 L. Ed. 631, in which the court upheld an order of a city commission refusing the request of a street railway company to abandon a part of its system. Arkansas, in which the railway operated, has a statute similar to that of Wisconsin. The railway earned more than enough to pay operating expenses of the whole system, and sought to abandon the branch on the sole ground that its operation was unremunerative. The court said: "The order complained of does not deal with rates. Nor does it involve the question of the reasonableness of service over a particular line. * * * It merely requires continued operation. We cannot say that it is inherently arbitrary. A public utility cannot, because of loss, escape obligations voluntarily assumed. * * * Nor does the expected deficit from operation affect its validity. A railway may be compelled to continue the service of a branch or part of a line, although the operation involves a loss. * * * This is true even where the system as a whole fails to earn a fair return upon the value of the property. So far as appears, this company is at liberty to surrender its franchise and discontinue operations throughout the city. It cannot, in the absence of contract, be compelled to continue to operate its system at a loss. Brooks-Scanlon Co. v. Railroad Commission of Louisiana, 251 U. S. 396 [40 S. Ct. 183, 64 L. Ed. 323]. But the Constitution does not confer upon the company the right to continue to enjoy the franchise or indeterminate permit and escape from the burdens incident to its use."

Was the action of the city council of Superior in withholding consent to the abandonment of the branch lines arbitrary and unreasonable? And does the enforcement of the Wisconsin statute amount to confiscation of the property in the hands of the receiver? The regulatory power conferred on the city council by the statute is subject to the limitation that the order must not be unreasonable. The showing of the receiver is that the entire system has been operated at a loss for more than ten years. The loss has increased year by year, caused by a steady decrease in revenue passengers and in passenger revenue. This is accounted for by the large and steadily increasing use of private automobiles. In the opinion of experts in street railway operation a reduc-

tion of service would not remove the loss. Various increases in fare rate over a number of years have not increased but' have lessened passenger revenue. The loss was traced to the three branch lines. By discontinuing that service it is possible to operate the remainder. If the branches are not abandoned the whole system is lost.

We think that the case does not fall within the rule of Fort Smith Light & T. Co. v. Bourland, supra; and that upon the facts averred and proved the action of the city council, particularly in view of the requirement that adequate bus service shall be maintained, must be held to be unreasonable, and the enforcement of the regulatory statute in the circumstances found to amount to a deprivation of rights protected by the Constitution. As stated in State of Iowa v. Old Colony Trust Co. (C. C. A.) 215 F. 307, 313, L. R. A. 1915A, 549, "They cannot force a railroad company to do the impossible."

Nor does Broad R. P. Co. v. South Carolina ex rel. Daniel, 281 U. S. 537, 50 S. Ct. 401, 74 L. Ed. 1023; Id., 282 U. S. 187, 51 S. Ct. 94, 75 L. Ed. 287, apply. That case is clearly distinguishable by reason of the provisions in the franchise of the corporation and the facts found by the state court as the basis for its decision.

Appellants urge that the receiver did not apply to the Wisconsin railroad commission for permission to abandon. As appellants have limited themselves to the sufficiency of the petition and the jurisdiction of the court, we might pass over this objection. The Supreme Court of Wisconsin, however, has ruled the point against the appellants, and held that the railroad commission has no authority to authorize the abandonment. City of Madison v. Railroad Comm., 199 Wis. 571, 572, 227 N. W. 10.

The order of the District Court is affirmed.