### AMERICAN BRAKE SHOE & FOUNDRY CO. v. INTERBOROUGH RAPID TRANSIT CO.

District Court, S. D. New York.
Jan. 10, 1935.

affirm the Manhattan lease, two important issues have been raised in these proceedings: First, applications have been made by the city and separately by the transit commission as the city's agent, for leave to sue the Interborough, its receiver, and others in the state court for a declaratory judgment that the cessation of operation of through trains over elevated and subway routes, such cessation being the threatened result of disaffirmance, would be a breach of Interborough's obligations to the city; and, further, for an injunction against such threatened breach and specific performance by the Interborough and its receiver of their alleged contractual obligations, although without enforcement thereof during the receivership. Second, pending consideration of the applications for leave to sue, an amended and supplemental bill was filed by the American Brake Shoe & Foundry Company, the original plaintiff herein, against the city of New York and the transit commission as alleged agent of the city, seeking to make them parties to the receivership proceedings. This bill the city and the transit commission, appearing specially, have moved to dismiss.

The agreements between the Interborough and the city, upon which the petitions for leave to sue in the state court are predicated, are the so-called Contracts 1, 2, and 3, the Elevated Extension Certificate in connection with the Joint Trackage Agreement, and contracts of 1903 and 1906 in reference to the 149th Street spur, the details of which need not now be recounted. Petitioners assert that cessation of the operation of through trains over subway and elevated would be a breach of some or all of these agreements and that this would enable the city, at its option, to rescind them or to pursue other remedies therein provided for. The receiver and the other Interborough interests urge that under the contracts properly construed, it is clear that disaffirmance of the Manhattan lease would not be a breach of Interborough's obligations to the city and that leave to sue must be denied because no prima facie case is stated in the petitions.

Miller, Boston & Owen, of New York City (Carl M. Owen and Mark F. Hughes, both of New York City, of counsel), for receiver of Interborough Rapid Transit Co.

Hughes, Schurman & Dwight, of New York City (Charles E. Hughes, Jr., and E. M. Bull, both of New York City, of counsel), for receiver of Manhattan Ry. Co.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Edwin S. S. Sunderland and Chester F. Leonard, both of New York City, of counsel), for Guaranty Trust Co. of New York as trustee under the first and refunding mortgage of Interborough Rapid Transit Co.

Charles Franklin, of New York City, for Manhattan Ry. Co.

Samuel Seabury, Charles Dickerman Williams, and W. G. Mulligan, Jr., all of New York City, for City of New York.

John J. Curtin, of New York City, for Transit Commission.

MACK, Circuit Judge.

Consequent upon the Interborough receiver's application 52 for permission to dis-

Obviously no decision on the receiver's application to disaffirm the lease can properly be made unless there be also a binding determination of the effect thereof on the city's rights under the contracts with the Interborough, inasmuch as such effect must be considered and might be controlling as to affirmance or disaffirmance. Con-

sequently, either here or in the state court, a final determination of the city's claim binding on both of the parties must, or at least properly should, be had preliminary to or as part of the decision sought in receiver's application 52.

On the Motion to Dismiss the Amended and Supplemental Bill.

The prayer of the supplemental bill is that "the rights and claims of the defendants the City of New York and the Transit Commission * * * may be ascertained and decreed along with the rights of the plaintiff and of all other creditors of said defendant Interborough Rapid Transit Company," and that "the Court enjoin and restrain the defendants the City of New York and the Transit Commission from taking any action by legal process or otherwise or asserting any claim in respect of its rights in and to, or in respect of, the assets of the defendant Interborough Rapid Transit Company, except in conformity with the rights of said defendants * * * as found and decreed by this Court." Further prayer is that the assets of the Interborough Rapid Transit Company be ordered sold, if necessary, free and clear of the city's claims. The city, appearing specially, has moved to dismiss the bill "for insufficiency of fact to constitute a valid cause of action in equity against the defendant, the City of New York," and "because such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of this Court." The city prays, in the alternative, that proceedings under the supplemental bill be stayed pending the determination by the state courts of its proposed action against the company and its receiver.

Equity Rule 37 (28 USCA following section 723) is the basis of complainant's supplemental bill. The relevant portion of this rule is as follows: "All persons having an interest in the subject of the action and in obtaining the relief demanded may join as plaintiffs, and any person may be made a defendant who has or claims an interest adverse to the plaintiff. Any person may at any time be made a party if his presence is necessary or proper to a complete determination of the cause."

Four principal issues are raised by the supplemental bill and the answers thereto: (1) Is the city a necessary or proper party within the purview of the rule? (2) Is a supplemental bill, filed by an unsecured creditor in the position of plaintiff, proper procedure under the rule? (3) Does the prayer of the bill that the city be joined as a party to the receivership proceedings pursuant to the rule, and that its rights be therein determined, present a case or controversy within the jurisdiction of the court? (4) Is the transit commission a proper party defendant? In my opinion, all of these questions must be answered in the affirmative.

First. That the city's presence is necessary to a complete determination of the issue of disaffirmance, and hence to a complete and final disposition of the receivership estate, seems obvious from the facts of the case as heretofore described. Equally clear are the authorities that, in such a situation, the city is a proper party to the cause. The test laid down by the Supreme Court in California v. Southern Pacific Company, 157 U. S. 229, 251, 15 S. Ct. 591, 600, 39 L. Ed. 683 (1895), for the determination of who are proper parties, is whether the court can "proceed to a decree * * * and do complete and final justice [between the parties], without affecting other persons, not before the court, or leaving the controversy in such a condition that its final termination might be wholly inconsistent with equity and good conscience." Again, in Williams v. Bankhead, 19 Wall. 563, 571, 22 L. Ed. 184 (1873), the court said: "Where he [a person not before the court] is not interested in the controversy between the immediate litigants, but has an interest in the subject-matter which may be conveniently settled in the suit, and thereby prevent further litigation, he may be a party or not, at the option of the complainant." See, also, Consolidated Gas Co. v. Newton, 256 F. 238, 245 (D. C. S. D. N. Y. 1919); Vicksburg, S. & P. Ry. Co. v. Schaff, 5 F.(2d) 610 (C. C. A. 5th, 1925); Kuchler v. Greene, 163 F. 91 (C. C. S. D. N. Y. 1908); 3 Cyc. Fed. Eq. Proc. #715, n. 21 (1928). Applying this general rule in receivership cases strikingly analogous to the present one, the courts have uniformly found that persons in a situation similar to that of the city herein are proper parties to the cause, whether their joinder in the proceedings is voluntary, through intervention, or compulsory, by service of process upon them. Blair v. Chicago, 201 U. S. 400, 26 S. Ct. 427, 50 L. Ed. 801 (1906); Crawford v. Duluth St. Ry. Co., 60 F.(2d) 212 (C. C. A. 7th, 1932); Central Union Trust Co. v. Anderson County, 268 U. S. 93, 45 S.

516

Ct. 427, 429, 69 L. Ed. 862 (1925); cf. Compton v. Jesup, 68 F. 263 (C. C. A. 6th, 1895).

■ Second. The city and the transit commission contend that even if they could be brought into the receivership proceedings, plaintiff as an unsecured creditor has no such interest in the assets of its debtor as to enable it to file this supplemental bill against them for this purpose. It is urged that to attain this end a dependent action must be instituted by the receiver. That the receiver would have such standing as to enable him to institute an ancillary suit against the city is settled by Blair v. Chicago, supra. But it by no means follows that the receiver is the only one who has an interest in the receivership estate sufficient to allow the bringing of such an action. In Central Union Trust Co. v. Anderson County, supra, the trustee under a railroad mortgage brought foreclosure proceedings against the railroad, and receivers were appointed. Anderson county threatened to enforce a state court decree requiring the railroad to maintain its general offices, shops, and roundhouse at the city of Palestine. An ancillary bill was brought by the trustee to remove the cloud on the title of the receiver's properties growing out of such state court decree. In holding the action properly brought, the Supreme Court said: "Ancillary suits are not limited to those initiated by persons who desire to come in and have their rights determined. Such a suit may be maintained by the plaintiff in the principal suit against strangers to the record to determine a controversy having relation to the property in the custody of the court and which, in justice to the parties before the court, ought to be determined in the principal suit. See Compton v. Jesup, 68 F. 263, 284, 15 C. C. A. 397; Street, Fed. Eq. Pr. § 1248." In Metropolitan Trust Co. of N. Y. v. Columbus, S. & H. R. Co., 93 F. 689, 690 (C. C. S. D. Ohio 1899), a receiver was appointed in a foreclosure action brought by the trustee of a railroad mortgage. Thereupon the trustee under a junior mortgage brought an ancillary bill to foreclose its lien, and joined as defendant with the railroad company a third person, conceded to be the legal owner of the property mortgaged. The bill prayed a determination that such third person had no beneficial interest in the property, but held title to it for the benefit of the mortgagor railroad. This joinder of the third party was held proper, the court,

through Taft, Circuit Judge, saying: "The complainant may make any one defendant to its bill, no matter what his citizenship, if his presence as a party is necessary to work out, in respect to the property held by the court, the equities to which the complainant is entitled." These cases establish that a receiver's possession of a debtor's property does not so divest a mortgagee of his interest therein as to prevent the mortgagee from bringing a dependent bill in the receivership proceedings, to determine adverse claims by third parties against the property, which claims threaten or encroach upon his rights.

The city urges, however, that a simple contract creditor, such as plaintiff herein, has no lien or property interest in his debtor's assets to give him a standing similar to that of a mortgagee. Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 43 S. Ct. 454, 67 L. Ed. 763 (1923), is relied upon. In my judgment, the contention is unsound. Although unsecured creditors as such have no lien on their debtor's property, they may acquire one if on a creditor's bill the corporate debtor waive judgment and return nulla bona, and consent to the appointment of a receiver. The assertion of a right such as is made by the city is the claim of an interest in the debtor's property adverse to the interest of the plaintiff and of all creditors on whose behalf plaintiff instituted the proceedings. The Central Trust Co. and Metropolitan Trust Co. Cases, and not Pusey & Jones Co. v. Hanssen, must be deemed controlling. See Barnett v. Mays, 43 F.(2d) 521, 527, 528 (C. C. A. 10th, 1930).

■ Third. Willing v. Chicago Auditorium Ass'n, 277 U. S. 274, 48 S. Ct. 507, 72 L. Ed. 880 (1928), is the city's and transit commission's chief reliance in their assertion that the supplemental bill presents no case or controversy within the constitutional jurisdiction of the federal courts. In that case, a tenant under a 99-year lease of land desired to remove the building thereon in order to erect a much larger structure. Willing, one of the landlords, expressed the opinion that this would be a breach of the lease unless the consent of all the landlords was obtained. The tenant thereupon brought a bill to remove the alleged cloud on his title. In denying his right to relief, the Supreme Court stated two propositions: First, that since the doubt as to the plaintiff's right under the lease arose on the face of the instrument, it was not in legal contemplation a cloud, and a

bill to remove it as such did not lie; second, that the landlord's mere refusal to agree with his tenant as to the meaning of the lease did not create a case or controversy within the meaning of the Constitution.

Although the city and transit commission have argued to the contrary, the first of these propositions is not involved here. Unlike the Willing Case, the supplemental bill is not an original action to remove a cloud on title. If the requirements of Equity Rule 37 (28 USCA following section 723) are met, as in my opinion they are, plaintiff need not show that it could have obtained the relief demanded in an original action as falling within one of the recognized categories of equitable jurisdiction. It suffices that defendants' presence as parties is necessary for a complete determination of the principal cause.

For the same reason the Willing decision is distinguishable in its constitutional aspect. The instant proceeding does not seek the advice of the court as to the rights of the parties upon a future, very problematical contingency. On the contrary, it is a proceeding brought to further the settlement of a very real and present controversy, whether or not the court shall direct disaffirmance of the lease. There is here, too, no mere refusal to acquiesce in a tenant's construction of the lease, but an opposition actively advanced and a threat of forfeiture earnestly asserted.

Moreover, the authority of that decision must be regarded as at least restricted in its scope by Nashville, C. & St. L. Ry. Co. v. Wallace, 288 U. S. 249, 53 S. Ct. 345, 348, 77 L. Ed. 730, 87 A. L. R. 1191 (1933). In upholding its jurisdiction to review a specific declaratory judgment rendered by a state court, the Supreme Court there expressed the view that the Willing Case should be regarded simply as an attempt by the plaintiff to secure "a decision advising what the law would be on an uncertain or hypothetical state of facts." Here we have a plaintiff seeking as against an adverse party a determination of a specific issue, the decision on which will affect valuable legal rights asserted by him. Within a long line of Supreme Court decisions, this presents a substantial controversy. See Blair v. Chicago, supra; Nashville, C. & St. L. Ry. v. Wallace, supra; compare Fidelity Nat. Bank & Trust Co. v. Swope, 274 U. S. 123, 47 S. Ct. 511, 71 L. Ed. 959 (1927); Pierce v. Society of Sisters, 268 U. S. 510, 45 S. Ct. 571, 69 L. Ed. 1070, 39 A. L. R. 468 (1925).

 Fourth. The transit commission urges that it is a state body, acting on behalf of the state, and that as such it cannot be sued in the federal court. This contention is likewise untenable. True it is that an action cannot be brought against the state either directly or, when the state is the real party in interest, indirectly through a suit against state officers in their official capacity. In re Ayers, 123 U. S. 443, 8 S. Ct. 164, 31 L. Ed. 216 (1887). But it by no means follows that the transit commission, although established by virtue of a state statute, is joined in the action in its capacity as a regulatory agency of the state. The state, as such, has no substantial interest in the controversy here in issue. See Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 390, 14 S. Ct. 1047, 38 L. Ed. 1014 (1894); Missouri, Kansas & Texas Ry. Co. v. Missouri R. R. & Warehouse Comm'rs, 183 U. S. 53, 59, 60, 22 S. Ct. 18, 46 L. Ed. 78 (1901). The transit commission is named as a defendant in its other capacity as representing the city of New York. It is more than and different from a mere agent, which ordinarily cannot be sued in place of or in addition to the principal. Section 9 of the Rapid Transit Act (Laws N. Y. 1891, c. 4, as amended by Laws N. Y. 1909, c. 498, § 4) grants the commission power to "sue in the name and behalf of the city for which it acts as a commission." Section 24, subd. 4, of the same act (as renumbered and amended by § 7 of Laws N. Y. 1909, c. 498), provides that certain certificates prepared by the commission for the benefit of a city shall be deemed a contract "enforceable by the commission acting in the name of and in behalf of the said city." Compare article XII of the Elevated Extension Certificate, and article VIII of the Additional Track Certificate. Subdivisions 3 and 4 of article XVI of Contract 3, which specifically allow the commission to institute proceedings to enforce the agreement, must be construed in the light of these sections of the Rapid Transit Act; the transit commission may bring an action under Contract 3, but the action would be on behalf of the city, and the city, not the state, would be the real party in interest. Compare Litchfield Const. Co. v. City of New York, 244 N. Y. 251, 155 N. E. 116 (1926). This was apparently the view of the New York Supreme Court in City of New York, act-

ing by the Transit Commission v. Interborough Rapid Transit Co., 136 Misc. 569, 240 N. Y. S. 316 (1930), judgment affirmed, Interborough Rapid Transit Co. v. Fullen, 257 N. Y. 20, 177 N. E. 295 (1931). The first conclusion of law in the findings of the court in that case reads as follows: "The plaintiff is authorized to institute this suit in the name and on behalf of the City of New York." It may be added that in the complaint proposed to be filed by the transit commission in its proposed state court action, the commission purports to act for the city. How, then, can it now be heard to say that its interest in the rapid transit situation is that only of the state? Compare International Ry. Co. v. Prendergast, 29 F.(2d) 296 (D. C. W. D. N. Y. 1928), in which a suit against the New York Public Service Commission was held maintainable; however, no issue on the Eleventh Amendment was raised.

On Application for Leave to Sue the Receiver in the State Court.

A federal court must always approach the delicate task of marking out the boundaries between the judicial jurisdiction of the nation and that of the states with scrupulous care; so especially when its jurisdiction is based solely on diversity of citizenship in a proceeding aimed to settle purely local problems. On these applications the city and the transit commission, while appealing to the discretionary power of this court, nevertheless assert the right to sue the receiver in the state court, without leave of this court. And in opposing the applications the Interborough receiver and the other Interborough interests not only ask the court to deny the leave, but contend that, as it is the duty of the court to proceed with the consideration of Receiver's Application No. 52 and kindred matters, it is without power to stay such proceedings.

■ Section 66 of the Judicial Code [1] is the chief reliance on behalf of the city in its asserted claim. In urging that Application 52 is an "act or transaction" within the meaning of this provision, the city, in my opinion, misconceives the scope of the enactment. As uniformly interpreted by the courts, its sole purpose is to make federal receivers amenable to state court suits on causes of action arising out of the ordinary operation of the company in receivership. Actions for personal injuries caused by the negligent operation of a common carrier are a familiar example. Gableman v. Peoria, Decatur & Evansville R. R. Co., 179 U. S. 335, 21 S. Ct. 171, 45 L. Ed. 220 (1900). On the other hand, causes directly affecting the administration of the receivership res, or property rights therein, do not fall within the provision; to allow such suits to be instituted without leave of the court which has the property in its custody would divest it of its exclusive jurisdiction thereover and lead but to conflict and confusion in administration. Such was not the legislative purpose.

■ The city admits that section 66 does not embrace suits intended to establish liens or possessory or ownership rights in the receivership res. Field v. Kansas City Refining Co., 296 F. 800 (C. C. A. 8th, 1924), cert. denied 266 U. S. 618, 45 S. Ct. 98, 69 L. Ed. 471; Id., 9 F.(2d) 213 (C. C. A. 8th, 1925), cert. denied 271 U. S. 676, 46 S. Ct. 489, 70 L. Ed. 1146; Buckhannon & N. R. Co. v. Davis, 135 F. 707 (C. C. A. 4th, 1905); J. I. Case Plow Works v. Finks, 81 F. 529 (C. C. A. 5th, 1897). Cf. Wabash Railroad Co. v. Adelbert College, 208 U. S. 38, 54, 28 S. Ct. 182, 52 L. Ed. 379 (1908); Edward Murphy, 2d, v. John Hofman Co., 211 U. S. 562, 569, 29 S. Ct. 154, 53 L. Ed. 327 (1909). These cases are sought to be distinguished, however, on the ground that the suit herein proposed involves the management of the company rather than property rights in its assets. Such a distinction ignores the ratio decidendi of the cases cited. An adjudication by another court on questions of the proper management of property in the custody of this court, unless with the consent of this court, would be as much an interference with the administration of that property as a decision on questions of title and possession of the res. In Dickinson v. Willis, 239 F. 171, 174 (D. C. S. D. Iowa, 1916), the court said: "After a careful

[1] "Every receiver or manager of any property appointed by any court of the United States may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed; but such suit shall be subject to the general equity jurisdiction of the court in which such manager or receiver was appointed so far as the same may be necessary to the ends of justice." **28 U. S. C. § 125 (28 USCA § 125).**

study of the cases I am satisfied that the line must be drawn between those cases which seek to recover a judgment against the receiver in the nature of damages and those cases which involve the possession of the property in the hands of the receiver, or the use of such property or the management thereof—the administration of the property in his hands. As to questions of possession, use, and management, I am satisfied that the appointing court, whether it be state or federal, has exclusive jurisdiction." This passage was quoted with approval in Field v. Kansas City Refining Co., 9 F.(2d) 213 (C. C. A. 8th, 1925). These authorities clearly establish that this court alone is to decide whether it or the state court shall determine the validity of the city's claims, and, therefore, that the proposed state court action is not maintainable unless, in the exercise of judicial discretion, leave to sue therein be granted by this court.

■ Equally clear, in my judgment, is the proposition that if leave be granted, proceedings on Application 52 may be stayed until the state suit is finally determined, if such course be found proper. The argument on this issue has revolved about the precise meaning and present scope of McClellan v. Carland, 217 U. S. 268, 30 S. Ct. 501, 504, 54 L. Ed. 762 (1910). In that case, the plaintiffs had brought suit in a Federal Circuit Court in South Dakota on grounds of diverse citizenship, for a decree establishing their rights as alleged heirs at law of a decedent, and for an accounting by the testamentary trustees. Because an action involving the same subject-matter was about to be brought in the state court, the federal judge stayed proceedings before him pending the determination of the prospective state controversy. This procedure was held by the Supreme Court to be an abuse of discretion remediable by mandamus. The court stated: "It * * * appeared upon the record presented to the circuit court of appeals that the circuit court had practically abandoned its jurisdiction over a case of which it had cognizance, and turned the matter over for adjudication to the state court. This it has been steadily held, a Federal court may not do. Chicot County v. Sherwood, 148 U. S. 529, 534, 13 S. Ct. 695, 37 L. Ed. 546, 548. * * * The circuit court of the United States had acquired jurisdiction, the issues were made up, and when the state intervened, the Federal court practi-cally turned the case over for determination to the state court. We think it had no authority to do this. * * *" See accord: Barber Asphalt Paving Co. v. Morris, 132 F. 945, 67 L. R. A. 761 (C. C. A. 8th, 1904); Kline v. Burke Const. Co., 260 U. S. 226, 234, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077 (1922).

■ Concededly, this language of the court, taken alone, is broad enough to support Interborough's contention that proceedings on Application 52 may not be stayed. But considered in the light of subsequent decisions, such an interpretation must be substantially restricted. These later cases indicate that a stay of proceedings in a federal court until the determination of a state court action involving the same or similar issues will be deemed an abdication of jurisdiction and therefore an abuse of discretion only when the state courts are not shown to be the more appropriate forum.

In Prentis v. Atlantic Coast Line Co., 211 U. S. 210, 29 S. Ct. 67, 72, 53 L. Ed. 150 (1908), decided just two years before the McClellan Case, it was held that an injunction suit in the federal courts was prematurely brought because the state remedial procedure had not been exhausted. Justice Holmes said: "As our decision does not go upon a denial of power to entertain the bills at the present stage, but upon our views as to what is the most proper and orderly course in cases of this sort when practicable, it seems to us that the bills should be retained for the present to await the result of the appeals [in the state courts] if the companies see fit to take them." In Boston & M. R. R. v. Niles, 218 F. 944 (D. C. N. H. 1914), four years after the McClellan Case, a three-judge statutory court, apparently considering the authority of the Prentis Case unshaken, followed the procedure suggested by Mr. Justice Holmes by holding an injunction suit in abeyance until the determination of a state court action which had been begun earlier and which involved the same issues. See, also, Stone, J., dissenting in Rogers v. Guaranty Trust Co., 288 U. S. 123, 149, 53 S. Ct. 295, 77 L. Ed. 652, 89 A. L. R. 720 (1933). In all three of these cases the questions at issue were considered local in character, so that the state rather than the federal courts were appropriate for their determination.

A group of admiralty cases, decided within the last few years, form an even

more decisive indication as to the restricted nature of the McClellan decision. First in Charter Shipping Co. v. Bowring, Jones & Tidy, 281 U. S. 515, 50 S. Ct. 400, 74 L. Ed. 1008 (1930), the Supreme Court held that a federal district court could, in its discretion, refuse to hear a suit in admiralty between two British corporations when, under the circumstances of the case, the English courts appeared to be a more fitting forum. More important is the decision in Langnes v. Green, 282 U. S. 531, 51 S. Ct. 243, 248, 75 L. Ed. 520 (1931). In a limitation of liability proceeding, it appeared that there was only one claim asserted against the owner and that a common-law action had been brought thereon in the state court. On the ground that the shipowner, by asserting his rights under the federal statute in the state court action, ought there to obtain full relief, the Supreme Court said that the proper procedure was to permit the state action to continue but to hold the proceedings in the District Court in abeyance rather than to dismiss them, lest the state court refuse to allow the right to limitation as a defense. The court, recognizing that complete jurisdiction existed, nevertheless stated that "the question is one of discretion in every case, and the court will not take cognizance of the case if justice would be as well done by remitting the parties to their home forum." When it appeared, however, that the state court would permit a contest of the defense, the Supreme Court held (Ex parte Green, 286 U. S. 437, 52 S. Ct. 602, 76 L. Ed. 1212 (1932) that the federal court must resume its exclusive admiralty jurisdiction. The decision in Langnes v. Green was extended in Re Putnam, 55 F.(2d) 73 (C. C. A. 2d, 1932), to cover a similar situation, except that the state court suit was brought after the petition for limitation of liability had been filed in the federal court.

Canada Malting Co. v. Paterson Steamships, 285 U. S. 413, 52 S. Ct. 413, 415, 76 L. Ed. 837 (1932), presented the situation of a collision of two Canadian ships in American waters while en route from one Canadian port to another. While suit was pending in the Canadian courts, libels were filed by cargo owners in the Federal District Court in New York to take advantage of the more favorable American maritime law. Largely because all the parties and witnesses were Canadian residents, the District Court refused to take jurisdiction. This was held to be a proper exercise of its discretion, the Supreme Court saying: "Obviously, the proposition that a court having jurisdiction must exercise it, is not universally true; else the admiralty court could never decline jurisdiction on the ground that the litigation is between foreigners. Nor is it true of courts administering other systems of our law. Courts of equity and of law also occasionally decline, in the interest of justice, to exercise jurisdiction, where the suit is between aliens or nonresidents, or where for kindred reasons the litigation can more appropriately be conducted in a foreign tribunal. The decisions relied upon by libelants are inapposite for several reasons. * * * McClellan v. Carland, 217 U. S. 268, 281, 30 S. Ct. 501, 54 L. Ed. 762, denied the right to abdicate to state courts jurisdiction which the Constitution in positive terms intrusts to the federal judiciary."

The basis of federal jurisdiction in McClellan v. Carland was diversity of citizenship; a statutory, not a constitutional right of recourse to the federal courts. Such a right seems no more absolute than any other statutory right of recourse; specifically, than the right asserted in the above-cited admiralty cases, especially in Langnes v. Green where "the federal proceeding was peculiarly and exclusively federal." See my decision in Stansbury v. Koss et al. (D. C.) 10 F. Supp. 477 (December 24 and 28, 1931). In my judgment, the distinction between the cases rests, not upon the particular grounds of federal jurisdiction involved, but upon their different factual presentation. In McClellan v. Carland and the cases in accord with it, no showing was made that the state courts were peculiarly fitted to decide the questions involved. Nothing in the situation called for an exercise of the federal court's discretion, and the stay of proceedings, therefore, could be regarded only as an unwarranted abdication of jurisdiction. In this view of McClellan v. Carland, the admiralty cases, the Prentis Case, and Stansbury v. Koss are clearly distinguishable. And these cases would seem to be more applicable here than the McClellan decision.

The Interborough has further argued that in the exercise of sound discretion, the state court action cannot be permitted, because the city has failed to establish a prima facie case on the merits. Durand & Co. v. Howard & Co., 216 F. 585, L. R. A. 1915B, 998 (C. C. A. 2d, 1914). It is not necessary and I do not deem it proper, on these applications, to *determine*

finally the validity of the city's claim *on the merits;* it suffices that a prima facie cause of action shall have been *stated.* Odell v. H. Batterman Co., 223 F. 292 (C. C. A. 2d, 1915). Despite the very able argument against the contentions of the city on the merits, I clearly cannot hold that the city should be precluded from a plenary presentation thereof in some forum; the controversy is one which will require the presentation of considerable evidence and meticulous study thereof before a final determination can be reached. Clearly this is not a "needless and fruitless litigation" which can serve but to harass the receiver, such as was found to be the case in Durand & Co. v. Howard & Co., supra.

In these circumstances, the applications must be considered as an appeal to the exercise of a sound judicial discretion. It is perhaps needless to say that, in this respect, they have been presented and opposed with thoroughness and ability, indeed, so well that I have felt compelled to consider and frequently to reconsider the briefs and arguments, doubtless for much too long a period, before announcing the conclusion that the applications must be denied.

In detailing the considerations which have moved me, I deem it proper at the outset again to express my strong personal conviction that creditor's receivership proceedings such as this one should more properly be dealt with by the state courts. While diversity of citizenship exists between the Interborough and the original petitioner herein, as well as between the company and many of its security holders, so that under present legislation federal jurisdiction is clear [Re Metropolitan Railway Receivership (In re Reisenberg), 208 U. S. 90, 28 S. Ct. 219, 52 L. Ed. 403 (1908); see, also, Ex parte Relmar Holding Co., 61 F.(2d) 941 (C. C. A. 2d, 1932), cert. denied 288 U. S. 614, 53 S. Ct. 405, 77 L. Ed. 987], the real controversy here is essentially local in character between local entities, involving the consideration of local legislation and decisions. The fundamental problem from the beginning was not that of reconciling conflicting rights of creditors, or of marshaling and distributing the assets of an insolvent debtor; it was and has continued to be whether or not the Manhattan lease may be shaken off and, if so, with what resulting liabilities.

My personal views as to the forum to which, by legislation, such proceedings should be confined, have added to my reluctance in reaching the decision to which, in the exercise of judicial discretion, I have felt compelled to come. That reluctance was intensified by the recent tendency in the federal courts to leave local controversies to be litigated, when feasible, in the local tribunals. See, e. g., Cavanaugh v. Looney, 248 U. S. 452, 39 S. Ct. 142, 63 L. Ed. 354 (1919); Diaz v. Gonzalez, 261 U. S. 102, 105, 106, 43 S. Ct. 286, 67 L. Ed. 550 (1923); Massachusetts State Grange v. Benton, 272 U. S. 525, 47 S. Ct. 189, 71 L. Ed. 387 (1926); Gilchrist v. Interborough Rapid Transit Co., 279 U. S. 159, 49 S. Ct. 282, 73 L. Ed. 652 (1929); Glenn v. Field Packing Co., 290 U. S. 177, 54 S. Ct. 138, 78 L. Ed. 252 (1933); Hawks v. Hamill, 288 U. S. 52, 53 S. Ct. 240, 77 L. Ed. 610 (1933). Cf. Frankfurter, Distribution of Judicial Power Between United States and State Courts (1928) 13 Corn. L. Q. 499. I would not wish this decision to be understood as intended in any way to reflect a departure from those cases.

But these applications present a situation very different from any involved in those decisions. The question here is not one of preferring the state courts to the federal courts for the determination of an entire controversy; instead, it is sought to have referred to the state courts for decision one particular situation out of the many involved in this receivership, one which, from the standpoint of the suit pending in this court and of the property in the charge of its receiver, is but a phase or a part of the larger issue of affirmance or disaffirmance of the lease. That issue it is the duty of this court, in all events, ultimately to resolve. No decision has been cited or found where, in such circumstances, jurisdiction has been relinquished; certainly, the burden is on the city to show at least that the balance of convenience weighs heavily in favor of its position. Cf. Investment Registry, Ltd., v. Chicago & M. Elec. R. Co., 251 F. 510 (C. C. A. 7th, 1918).

What has just been said serves in large part to distinguish the present case from Gilchrist v. Interborough Rapid Transit Co., supra, which has been strongly urged as decisive of these applications. The question there was essentially whether the state or federal court should adjudicate the entire controversy in the first instance; the question here, on the other hand, is in effect whether the federal court, having already entered upon the administration of an estate, which task it must eventually com-

plete, should remit to the state courts what are important intermediary steps in the administration of that estate, either for a declaratory judgment as to the interpretation of local contracts and franchises or for a final determination thereon, though without power of enforcement. Different considerations are obviously involved in the two situations. Moreover, the Gilchrist Case presented more delicate questions of federal and state relations than do these applications; to grant an injunction against the enforcement of state laws is a far greater interference with the functions of state government than merely to interpret the force and effect of public utility franchises and contracts. That that interpretation may involve questions as to the meaning of the decree and opinion in an earlier New York case (City of New York v. Interborough Rapid Transit Co., 257 N. Y. 20, 177 N. E. 295 [1931]), while of some importance, does not seem to me a controlling reason why it should not be undertaken.

It must be recognized, too, that a state rather than a federal court adjudication in this litigation is not as important as in many of the above cited cases. Two reasons generally assigned for preferring state court action in certain instances are that local matters may be decided by local tribunals, because they are ordinarily more familiar with the general background of the controversies than are the federal courts, and that conflicting interpretations of strictly state law questions by the state and federal courts may be averted. While the first of these reasons tends to the granting of the requested leave, the second is not, as a practical matter, of fundamental importance in this case. The questions whether Contract 3 or any of the contracts requires the continued operation by the Interborough of through trains over the Manhattan properties, and what the consequences of a breach would be, have never been adjudicated in the state courts, and the issues, once decided by this court, are not likely to be raised in a subsequent controversy, since both parties to the contract will be bound by the decree. Moreover, even though consideration of the legislative background of the contract be essential for a proper understanding of its provisions, no question as to the validity or effect of any particular state statute is involved, so that future litigation between other parties will not thereby be affected. There is no apparent reason why this court should reach a conclusion on any of the matters involved in this controversy in any respect different from that which would be reached in the state courts.

Despite this, the reasons in favor of letting local tribunals handle local matters might well lead to a granting of the applications, were it not both for what I believe will be the greater delay and the difficulty and embarrassment in administration which would flow therefrom. After all is said and done, it is this court which must in the end decide the question of affirmance or disaffirmance. The answer thereto is in part, but only in part, dependent upon the validity of the city's claim. Months and even years of time might be wasted should the state court decide that cessation of the operation of through trains would not be a breach of Contract 3, or would not have deterring consequences, and should this court, despite that, come to the conclusion that disaffirmance is for other reasons inadvisable. Conversely, disaffirmance might be authorized even though, but for the receivership, specific performance of Contract 3 and/or the other contracts might have been decreed; moreover, the remedies available to the city in the event of disaffirmance might be found to be less damaging to the receivership estate than continuance of the Manhattan lease.

Even on the assumption that the decision on the city's claim would eventually be held decisive of Application 52, the delay involved in permitting that decision to be made by the state courts is an important element affecting the exercise of discretion; it tends against granting the petitions. Despite the preference given by the New York courts to suits of this sort, and despite any instructions that might be given to the receiver not to enter dilatory pleas, the possibility would remain that the state court action would extend over a considerable period of time. Dilatory pleas might be entered by other parties joined as codefendants with the receiver; over them, this court would have no control. And these other parties could not well be dismissed from the case; their presence is necessary at least for the purpose of making a decree res adjudicata as to them. The right to a declaratory judgment in the present circumstances might be called into question, and even though eventually decided in favor of the city, litigation thereon might well consume months of time; so too the controversy as to whether the city's bill is properly brought by the corporation counsel or

by the transit commission or by each of them. Delay, unfortunate enough in any receivership, is peculiarly undesirable in this particular proceeding. I, myself, am responsible for a good part of it on these motions and applications, but I believe that the causes therefor will not operate hereafter.

Another factor stressed by counsel is of at least some weight; months have already been spent in making this court more or less familiar with the background of this controversy, and with the intricate provisions of Contract 3 and the other contracts. Were the case to be referred to the state court, the entire process of "educating" the court would have to be entered upon anew; with the judiciary as pressed as it is, the delay which this factor might cause is not unimportant.

Allocating the gross receipts of the Interborough system to the various charges which are continuously accruing against the company is now and will remain a very delicate problem until the question of affirmance or disaffirmance is finally determined. The Manhattan interests have from the beginning demanded that the rentals under the Manhattan lease should be paid in order to prevent disintegration of the Manhattan road through foreclosure either of the mortgages or tax liens. Interborough's position, on the other hand, has been that in the event of disaffirmance, it will be liable only for the net earnings of the leased properties during the receivership period, a sum estimated by it as considerably less than the stipulated rentals, and therefore that, pending decision on Application 52, it should not be required to pay to the Manhattan anything beyond that estimated sum. In these circumstances, any order of the court directing the distribution of current funds must be in the nature of a practical compromise between these two positions. In a recent opinion in this case, I detailed the many and varied factors which enter into such allocation; until a decision is made on the fundamental question of affirmance or disaffirmance, the situation then existing will undoubtedly continue, except that with the passage of time the difficulties already encountered will be aggravated.

Considering all the factors entering into a decision on the exercise of the judicial discretion for or against the allowance of the proposed state court suits, and proceeding on the assumption, as I must, that in the end the decision of this court and that of the New York court would be, as they ought to be, the same, I hold that neither the city nor the transit commission has sustained the burden of establishing the desirability of either of the proposed suits.

Motion to dismiss denied.

Applications for leave to sue receiver denied.